APRIL 16, 1802.

# Wm. Marston v. Augustus W. Waldrhyn.

*Upon an appeal from a decree of the Lexington District Court.*

1. Cape holding the title bond of Nall for 1,400 acres of land, assigned it to Morton as security for a loan. Morton advertised the land for sale at auction, closing his advertisement with the words: "*A general warranty deed executed by Martin Nall.*" *Held*—That the legal import of these words in the advertisement is, an undertaking on the part of Morton to the purchaser that Nall shall execute such a deed.

2. The parol declarations of an auctioneer can not vary the printed terms of sale, unless those declarations were made known to the purchaser before the property was struck off to him.

Morton *v.* Waldrhyn.

3. *Assumpsit* will lie to recover back money paid for land to which the vendor is unable to make a title, and the facts need not be set forth in the declaration specially.

4. If a witness can neither gain nor lose by the result of the cause in which he is called to testify, and the verdict therein can not be given in evidence for or against him, he is competent.

5. A remote and contingent interest goes not to the competency, but to the credibility of the witness.

6. In a controversy between the assignor and assignee of a title bond, the obligor is competent to prove the bond void for fraud or failure of consideration.

On the 7th day of September, 1790, John Cape procured a certificate from Thomas Washington, certifying that he was entitled to 5,000 acres of land in the South Carolina Yazoo Company, which certificate was lodged by Cape with the director and a copy furnished by him to Cape, who, on the 6th day of November, 1790, assigned the same to Martin Nall ; in consideration of which Nall, on the same day executed a bond to Cape to convey to him 1,400 acres of land lying on the Ohio river, being the said Nall's settlement and pre-emption. Cape being indebted to William Morton, and wishing further advances, on the 3d day of December, assigns Nall's bond for the 1,400 acres of land to Morton, to whom Nall made a deed, Morton still retaining the bond, and wishing to get the debt due by Cape, he, on the 19th February, 1791, advertises in the *Kentucky Gazette*, the said 1,400 acres of land for sale, in the following words :

"For sale, a valuable tract of land lying on the Ohio, a few miles above the mouth of Kentucky, containing 1,400 acres, the settlement and pre-emption of Captain Martin Nall. The terms may be made known by applying to the subscriber; if the above tract of land is not disposed of before Wednesday, the 9th day of March next, it will then be exposed to sale by public vendue in Lexington—£125 to be paid in hand, one-half of the remainder payable in six months, the balance on or before the first day of June, 1792. Bond with approved security will be required, and a general warranty deed executed by Martin Nall.

"WILLIAM MORTON."

The land was accordingly exposed to public sale, by Francis Jones, at Morton's request, when Augustus W. Waldrhyn became the purchaser, and Morton on the 15th of March, executes the following receipt:

8

"Lexington, March 15th, 1791—Received of Augustus W. Waldrhyn, one hundred and twenty-five pounds, being a part of the purchase money of a tract of land to be conveyed to said Waldrhyn by Martin Nall, containing 1,400 acres, lying on the Ohio a small distance above the mouth of Kentucky.

"WILLIAM MORTON."

Afterward John Coburn (being some how interested) attended by Waldrhyn, went to Nall's house, and by the *request and direction of Morton* demanded a deed for the land sold as aforesaid to Waldrhyn, Nall accordingly signs a deed conveying the land to Waldrhyn, in consequence of which *Coburn* delivered to Nall the deed which had been executed by him to Morton for the aforesaid land. The deed signed by Nall for the purpose of conveying the land to Waldrhyn, was attested by Coburn only; and in consequence of there not being a sufficient number of witnesses present to attest the said deed, it was agreed by the parties then present, that they would meet at the next Woodford court and carry into effect or complete the deed aforesaid. Coburn and Waldrhyn attended, Nall failing to do so. Some time afterward they called on Nall, and again demanded a completion of the said deed, which he absolutely refused, alleging he had been defrauded by Cape under whom Morton claimed, and that he never would convey the land—and on the 13th of August, 1791, publishes in the *Kentucky Gazette* the following advertisement:

"All persons are hereby forwarned from taking an assignment on two bonds given by me to John Cape of Fayette county; one for 1,400 acres of land on the Ohio; the other on the Ohio near Bracken's creek—the above lands were to be given in exchange for lands at Yazoo : but as it appears from the President's proclamation that there can be no title made to the Yazoo lands, and as it is plain a deception was intended, I am determined not to make a title to the above lands until I can get a title to the lands for which they were exchanged.

"MARTIN NALL."

Coburn acted as the agent of Morton so far as respected Morton's interest. Waldrhyn then commences this suit against Morton to recover back the money which he had paid with interest. On the trial in the Lexington district court, the plaintiff introduced Martin Nall as a witness to prove that the consideration paid for the 1,400 acres of land that he signed the deed for to Waldrhyn had

failed.   The defendant excepted to his competency.  This exception was overruled by the inferior court, and a bill of exceptions was tendered and signed, after Nall had given his testimony.  The defendant then demurred to the evidence; the testimony of Nall was reduced to writing, and, together with the certificate to Cape; Nall's bond to Cape; the assignment thereof to Morton; Morton's advertisement for the sale of the land and receipt for the money; the deed from Nall to Waldrhyn ; Nall's advertisement; the deposition of Coburn; of Jones as to the sale; and the depositions of Duke and McConnel, which went to prove Morton's declarations, that he would not be responsible for the title of the land, are all spread on the record by the demurrer.  The inferior court overruled the demurrer, and the damages sustained by the plaintiff were then ascertained by a jury on a writ of inquiry, and judgment was entered up accordingly, from which an appeal was prayed to this court.

The counsel for the appellant contended that he had complied with his contract; that the suit can not be maintained in this form of action, and that even if assumpsit would lie, it should have been a special action on the case, stating the whole circumstances, and not a general count for money had and received; that Nall was an incompetent witness, and that upon the evidence the law was with the appellant.

As to the first point contended for by the appellant, that he has complied with his contract.  In order to determine this point, the contract ought to be correctly understood.   By the terms held out in the advertisement, the appellant states, that a general warranty deed will be executed by Martin Nall for the said 1,400 acres of land, the legal import of which is that he undertakes that Martin Nall will execute such deed; and this construction seems to have been anticipated by the appellant's counsel when it was contended that the deed signed by Nall to the appellee, although attested by one witness only, was sufficient; that it was good and valid against Nall, and might be made so against all other persons by commencing a suit in chancery; that it was as good as a bond.   It being necessary to resort to a court of chancery is an admission that the deed does not vest a title at law, and to be obliged to go into a court of equity, where his success might be doubtful, the delay and his expenses great, was no part of the contract which the appellee undertook to perform.   He had a right to expect that Martin Nall would make a deed which should vest in him a complete legal

title. The admission of the legal construction of the contract on the part of the appellant seems to be farther evinced by another argument of his counsel, that the appellee having accepted the deed defectively executed and consented to meet at Woodford court to have it perfected, had by this act stopped himself from alleging the insufficiency of the deed and waived his right to call on the appellant to have the deed completed. But from the testimony of Coburn, who was the appellant's agent, it appears to this court that this objection is not well founded : the deed executed by Nall to Morton was by him placed in the hands of Coburn, with directions to call on Nall to execute a deed to the appellee, who attended to receive it; but when, for the want of a sufficient number of witnesses, he found that the deed could not then be perfected, consented, as all parties did, to meet at the next Woodford court and have it completed. The appellant by his agent joined in this consent, and it was as much an act of his as of the appellees. But what injury resulted to the appellant from this consent that can be attributed to the appellee, the court can see none. If it is said that the giving-up to Nall the deed which he had executed to the appellant, has placed him in a worse situation than that in which he stood let it be answered, that this was the act of the appellant's agent with whom he had deposited this deed and over whom the appellee had no control. It seems to be admitted, and the court is of opinion, that the deed as attested does not vest in the appellee a complete legal title, and therefore the appellant has not performed the agreement on his part according to its true legal import and meaning. And although it is in proof that the appellant, on the day of the sale, declared that he did not mean to make himself responsible for the title, yet from the advertisement he is bound that Martin Nall shall make the title with general warranty, and should it be conceived that these declarations were subsequent to and variant from the advertisement, it is answered that the parol declarations of an auctioneer can not vary the printed terms of sale, unless such declarations were made known to the purchaser, which does not appear in this case.

As to the form of the action it is contended that the assumpsit will not lie, where it is to try a right. Two cases were relied on, the one where a person claiming a right of common, had his cattle taken damage feasant, paid the money charged for the damage, and then brought assumpsit to recover it back, for the purpose of trying the right. The action was adjudged not to lie for two reasons ;

first, because the defendant would not be apprised of the point to which to apply his defense; and, second, the right would not be decided, for it would not appear on the face of the record; the other where money was given as the difference in the exchange of two horses, when it turned out that one of them was unsound, assumpsit would not lie for the warranty was the point to be tried, which could not be done in this action. The first reason given in the case to try the right of common, may be applied to every case in which the action lies, and if good destroys the action altogether, it is too general to have any influence in this case. The second reason does not apply in this case. In this action, it is not necessary to try the fairness or consideration of the contract between Cape and Nall, or to go into the transactions between Cape and Morton or Nall and Morton. This action is founded on the contract arising from the sale of the land by the appellant to the appellee and from the appellant's not complying with the terms of that contract and sale. As to the second case cited, where the warranty was the point to be tried, the same answer might be given, but in Douglass, page 18, it states that assumpsit is a proper form of action, where there has been an express warranty. But if assumpsit will lie, the declaration should have set out the circumstances, specially and precisely, to support which three cases are cited, 2 Washington, 172; Cowper, 818, and *Clark* v. *Shannon's Executors*, in this court; the first and third cases upon examination are particular ones, justly forming exceptions to the general action for money had and received. The first was against the executors of a sheriff, for money had and received by his deputy in his official capacity, and the other was against executors for the transactions of their testator in the character of a public agent; for these reasons, it is laid down as the ground of the decisions that the declaration should set forth the particular circumstances; the case cited from Cowper in the case of the warranty, which has already been answered, and it may be further observed, it seems to clash with the case in Douglass, and clashing decisions ought not to be much relied on; but the case of *Moses* v. *McFarlane*, 2 Bur. 1005, and 1 Blac. Rep. 219, is conceived to be decisive on this point where it is laid down, that the great benefit of this action is, that the plaintiff need not set out the particular circumstances on which *ex œquo et bono* he demands satisfaction. And therefore the court is of opinion that the action is properly conceived.

As to the incompetency of Nall, it was contended by the counsel for the appellant that this witness was interested, to prove which,

the bond given by him to Cape and the deed executed to the appellee were relied on, and further that he ought not to be permitted to impeach a security which he has given. It is to be lamented that the authorities differ so much upon this subject, yet on a careful examination of them this principle may be extracted, "that if the witness is neither to gain, nor lose, by the event of the cause in which he deposes, or if the verdict can not be given in evidence, for or against him, he can not be objected to on the score of incompetency;" another principle may also be stated that unless the interest be direct, the objection should rather go to the *credibility* than the *competency*. Apply these principles to Nall's situation, is he to gain or lose by this cause? Could the verdict in this cause be given in evidence for or against him in a suit which might be brought against him by either the appellant or appellee? These questions must be answered in the negative. How can his testimony in this suit impeach any security which he has given? The decision of this cause for either party does not better or make worse his situation; his liability upon the bond executed to Cape which was assigned to the appellant, or upon the deed executed to the appellee does not depend on the event of this cause and can not be affected by it. But admitting Nall to be an incompetent witness, the court is of opinion, as was contended by appellee's counsel that there is sufficient evidence in the cause independent of his testimony, to support the action on the part of the appellee. If this reasoning be correct, it will follow as of course that the inferior court determined properly in overruling the demurrer to the evidence.

Upon the whole case, this court is of opinion that *ex æquo et bono* the appellee is entitled to recover back the money with interest which he paid to the appellant; that the decision of this cause does not affect the appellant's claim upon Nall, but leaves it as it stood before the sale of the land to the appellee, with this exception that the appellant has given up the deed executed by Nall to him. This was his act and not the appellee's—but the appellant still holds Nall's bond, the contract between Nall and Cape, as well as the transactions between Nall and the appellant, stand upon their original foundation, unimpeached by this cause. Therefore, this court is of opinion that the judgment be affirmed with costs, which is ordered to be certified to the said court.

*Note.*—On the 19th of April following, the judgment aforesaid was amended, and ten per centum damages given on the judgment to the appellee.