DAUGHDRILL *vs.* ALABAMA LIFE INSURANCE AND TRUST COMPANY.

[TRESPASS AGAINST TAX-COLLECTOR.]

1. *Theory of incorporations.*—In theory, the peculiar privileges of corporations are conferred upon them, by contract with the State, in consideration of the public benefit which will result from their operations; and the fact that, in the hurry of legislation, the privileges conferred sometimes greatly exceed in value the benefits accruing to the public, is not a matter for the consideration of the courts, in determining the validity of a grant of powers which will, *prima facie,* exert a beneficial influence on the commerce, trade, and mercantile interests of the country.

2. *Constitutionality of clause in charter of private corporation providing for commutation of taxes.*—A provision in the charter of an incorporated insurance company, establishing a fixed bonus in commutation of all taxes on its capital stock and property, is not obnoxious to any constitutional objection.

3. *Private acts not repealed by Code.*—By virtue of the exception contained in section 10 of the Code, a clause in the charter of an incorporated insurance company, providing for a commutation of its taxes, is not repealed by section 391, regulating the assessment of taxes.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. C. W. RAPIER.

THIS action was brought by the appellee, a corporation chartered by the legislature of this State, against James H. Daughdrill, "to recover damages for wrongfully taking three mahogany writing-desks, the property of plaintiff," which the defendant had seized, as tax-collector of Mobile county, to satisfy the county taxes for the year 1853, which the plaintiff refused to pay. It was submitted to the decision of the court on the following admitted facts: "The plaintiff is a corporation, chartered by the legislature of this State.—See the act, with amendments thereof. The defendant is the tax-collector of Mobile county. In the year 1853, the tax-assessors of said county assessed the capital stock of said company, actually paid in and liable to taxation, at $200,000 ; the county tax on which, if liable to taxation, amounts to more than the value of the desks for the taking of which the action is brought. The plaintiff refused to pay any county tax. The county taxes were demanded by the defendant, but his demand was refused. Therefore, long after the 1st Monday in December, 1853, to-wit, on the 2d Monday in December, 1854, he seized and distrained said desks on account of said county taxes. If, on these facts, the plaintiff is entitled to recover, the value of the desks is admitted to be $51 ; and if the plaintiff is not entitled to recover on these facts, then judgment is to be rendered for the defendant. This agreement may be at any time amended, so as to raise the question directly whether the plaintiff is liable to pay county tax on its capital stock or any of its property."

On these facts, the court rendered judgment for the plaintiff; and its judgment is now assigned as error.

The material portions of the appellee's charter are copied into the opinion of the court.

P. HAMILTON, E. S. DARGAN, and JOHN HALL, for the appellant, made these points :—1. The right of taxation is a part of the sovereign power, and is not to be taken away

or diminished by mere implication: the waiver of the right must be by express language.—Stein v. Mayor of Mobile, 17 Ala. 239; Same v. Same, 24 Ala. 611; Providence Bank v. Billings, 4 Peters, 514; Charles River Bridge v. Warren Bridge, 11 Peters, 420; Bank of Pennsylvania v. Commonwealth, 19 Penn. St. (7 Harr.) R. 150; Easton Bank v. Commonwealth, 10 Barr, 451; Brewster v. Hough, 10 N. H. 138. At the time when the appellee's charter was granted, the right to tax for county purposes was vested in the commissioners' courts of the several counties; and has been held to have been rightfully so bestowed.—17 Ala. 234. In this state of things, the exemption claimed by the appellee, if valid at all, applies only to the State tax, and cannot be extended to the county tax.

2. If a more extended meaning be given to the language, the effect will be to make provisions inconsistent with the constitution. The first section of the bill of rights forbids the granting of exclusive privileges and emoluments, except in consideration of public services. The laws must operate equally on all citizens.—2 Yerger, 554; 5 Yerger, 320; 3 Greenl. R. 326–36. They cannot be suspended in favor of an individual.—11 Mass. 396, 404. By what right can the legislature exempt the capital of this corporation—that is, the property of its stockholders, one portion of the citizens of the State—from bearing its share of the public burdens? The property of all the other citizens of Mobile is taxed, to provide for the poor, to keep up roads and bridges, and to maintain the administration of the laws; from all which burdens the appellee's property is exempt, under the construction of its charter for which it contends. Such a construction would defeat the equal operation of the tax laws, and is against the spirit and letter of the constitution.

3. It is no answer to this to say that the State has so contracted. The power of the State to contract is limited. It cannot contract to disregard the constitution. If it transcend that limit, the contract is void. The power to contract at all in regard to its sovereign rights is doubted, and for very grave reasons.—Brewster v. Hough, 10 N. H.

138; Debolt v. Ohio Life Ins. & Trust Co., 1 Ohio State R. 564; Toledo Bank v. Bond, *ib.* 628; Knoup v. Piqua Bank, *ib.* 604; Plank-road Co. v. Busted, Law Register for February, 1856. Notwithstanding such contract, the subject still remains within the power of the legislature; and the effect of sections 391 and 776 of the Code is, to do away with the laws under which the appellee claims.

ROBERT H. SMITH, *contra.*—1. The State has not attempted to tax the appellee, otherwise than as provided by its charter. The Code is to be construed as a single statute, so that all its parts may have effect, and harmonize with each other. Section 391, providing for the assessment of taxes, is to be construed in connection with section 10, which expressly exempts from repeal all private acts of incorporation. The county tax is a per-centage on the State assessment, and an incident to it. The county taxes what the State assesses, and what the State does not assess the county cannot tax. The county tax is a per-centage, not on the State tax, nor on all sources of State revenue, but on the State assessment. A bonus, paid by a corporation, may be in the nature of a tax, but is in no sense an assessment, as the word is defined by Bouvier.

2. If the legislature had attempted to tax the appellee, otherwise than as provided in its charter, the law would have been void, because violative of the constitutional provisions respecting laws impairing the obligation of contracts. The charter is a contract with the State, as has been settled, after full argument and consideration, by numerous decisions of the supreme court of the United States, and by other high judicial tribunals.—Dartmouth College case, 4 Wheaton, 125; Piqua Branch Bank v. Knoup, 16 How. (U. S.) 416, 427; 3 How. (U. S.) 133; 3 J. J. Mar. 598; 2 Hawks, 10; 13 Iredell, 75; 11 Iredell, 558; 9 Yerger, 490; 2 Murph. 266. In these cases, it will be observed, the question is considered with direct reference to the taxing power as a part of the political sovereignty of the State. The doctrine of Mr. Justice Catron, in the case cited from 16th Howard, might always

be made a ready pretext for violating the plighted faith of the State, and may be called the parent of repudiation.

3. The contract is not violative of any provision of our State constitution. The 1st section of the bill of rights, on which the constitutional objection is predicated, was intended to inhibit the establishment by the State of sinecures or privileges such as are appendages to an aristocratic government. Similar provisions are contained in the constitutions of North Carolina, Tennessee, Kentucky, and other States. It is always for the legislature to determine, in conferring exclusive rights or privileges on persons, natural or artificial, how far the benefit resulting will be a public service; and the courts cannot look behind the action of the legislature. If this were not so, numerous acts of incorporation would be void; indeed, almost every charter contains a grant of exclusive privileges, conferred, not for any direct public services to be rendered, but because the corporation, in the opinion of the legislature, though established solely for private advantage, will indirectly prove to be a public service. The same objection would apply to laws exempting persons from jury duty. This argument has been considered, and answered on these grounds, in the following cases: Yadkin Navigation Co. v. Benton, 2 Hawks, 13; Patterson v. Trabue, 3 J. J. Mar. 598; Bank of Newbern v. Jas. Taylor, 2 Murph. 266; 1 Carolina Law Repository, 246. See, also, 17 Ala. 234; 24 Ala. 591.

4. But the provision in the appellee's charter, respecting the commutation of taxes, is in no sense a privilege: it is a burden, an exaction, which is required to be enforced in the most rigid manner. When it was laid, the State levied no taxes, but supported the government from the profits of banking. The appellee has thus paid, not only a direct consideration to the public, but one highly advantageous to the State.

WALKER, J.—The 16th subdivision of section 391 of the Code subjects corporations, created by the laws of this State, and not exempt under section 390, to a tax of 25 cents on each hundred dollars of the capital stock actually

paid in. Section 776 of the Code authorizes the levy of a tax for county purposes, not exceeding one hundred per cent. upon the State assessment. The tax levied upon the corporation, which is the appellee here, did not exceed one hundred per cent. on what would have been the State tax, had it been assessed; and that corporation is not one of the institutions exempted from taxation by section 390. The appellee is, therefore, liable to taxation, unless an exemption is provided by the charter.

The Alabama Life Insurance & Trust Company was chartered on the 9th January, 1836. The 22d section of the charter provides as follows: "As a full commutation for all taxes, impositions, or assessments on the capital stock of said company, or on any of its property or effects, the said company, during the continuance of its charter, shall pay annually, on the first Monday in December in each year, to the treasurer of the State, for the use of the people thereof, the sum of two thousand dollars." Section 25 of the same charter contains the following words: "This act shall continue and be in force, *unalterable by the general assembly* without the consent of the trustees of the said company, for and during the term of twenty years, and no longer." The capital stock of the company was originally one million of dollars, but was subsequently reduced; and a corresponding reduction was made in the bonus to the State.

The questions which have been argued in this case, are as follows: 1st, whether an act discriminating in the imposition of taxes, in favor of a corporation, is constitutional; 2d, whether the legislature has passed any law for the repeal of the provision of the charter in reference to the commutation of taxes; 3d, if such an act has been passed, whether it is constitutional.

It is argued for the appellant, that a law which confers upon a corporation the privilege of paying a specific sum, as a commutation of, or, in other words, in exchange or barter for all taxes, contravenes that clause of the first article of the State constitution, which says that "no man or set of men are entitled to exclusive, separate, public emoluments or privileges, but in consideration of public ser-

vices." We shall not controvert the proposition, that the discrimination in favor of any single natural or artificial person in the imposition of taxes would be tantamount to conferring an exclusive separate public privilege. During a portion of the corporate existence of the appellee, the State exacted no taxes from its citizens; during another portion of its existence, the State has exacted taxation from the people of the State generally, in a heavier proportion than is exacted from this corporation under the commutation feature of the charter. If we look at the commutation as extending through the entire corporate existence, it would seem that such an exchange of the annual tax, accommodated in its amount to the varying necessities of the State by the judgment of successive legislatures, for a fixed annual sum, would be a privilege or burden, according as the aggregate amount paid the State might be less or greater than the aggregate of the tax during the same period. If we contrast the commutation with the tax for the particular year 1853, it would seem that the commutation is a privilege, because the tax would have exceeded for that year the amount paid as a commutation. We do not determine in which light it is proper to regard the question; because, conceding that the commutation is a privilege, within the intendment of the constitution, we decide the question of the constitutionality of a commutation of taxes in favor of this corporation, adversely to the appellant.

Every corporation is invested with privileges which distinguish it from natural persons, and do not pertain to the people generally. The perpetuity, right of succession, and of suing and being sued in a corporate name, and of exemption from liability on the part of the corporators to its debts beyond their stock, are privileges characterizing almost all corporations. A still higher privilege is that, conferred upon all companies organized to build roads, of subjecting private property to their use, upon making compensation. The conferring of none of these or the like privileges has ever been supposed to involve an infringement of the constitutional provision as to exclu-

sive privileges. If it did, every act of incorporation ever granted in the State would be void.

The theory of corporations is, that the privileges are conferred upon them in consideration of public benefit which will result from their operations. The production of such benefit constitutes the "public service" for which the constitution permits the grant of peculiar privileges. It is said in Blackstone's Commentaries, 467 : "It has been found necessary, when it is *for the advantage of the public* to have any peculiar rights kept on foot and continued, to constitute artificial persons, who may maintain a perpetual succession, and enjoy a kind of legal immortality." "The public *benefit* is deemed a sufficient consideration of a grant of corporate privileges."—Angell & Ames on Corporations, § 13.

In the case of Currie's Adm'rs v. Mutual Ins. Society, 4 H. & M. 315, Judge Roane, of Virginia, used the following language: "With respect to acts of incorporation, they ought never to be passed, but in consideration of services to be rendered the public. This is the principle on which such charters are granted, even in England ; and it holds *a fortiori* in this country, as our bill of rights interdicts all 'exclusive and separate emoluments or privileges from the community, but in consideration of public services.' It may be often convenient for a set of associated individuals to have the privileges of a corporation bestowed upon them ; but, if their object is *merely private* or selfish, if it is detrimental to, or not promotive of the public good, they have no adequate claim on the legislature for the privilege."

This court expressed the same idea in the old case of Aldridge v. Tuscumbia Rail-road Company, 2 Stew. & Por. 211 : "Whenever the State grants a charter of incorporation, it is always presumed that she receives for it some equivalent ; that the grant is not without a *quid pro quo*." See, also, Dartmouth College v. Woodward, 4 Wheat. 637 ; Toledo Bank v. Bond, 1 Ohio State R. 622, 642 ; Dale v. Governor, 3 St. 387 ; 1 Domat on Civil Law, 566.

The principle upon which the bestowment of those

privileges is harmonized with the constitution, is, that they are the result of contract between the corporation and the State. The public service to be done by the enterprise, in which the corporation is engaged, is the consideration upon which the State enters into the contract. The constitutional power of the legislature, to grant the privilege under consideration, cannot be distinguished from those other privileges which are so frequently conferred upon corporations without a question of their validity.

In the hurry of legislative proceedings, it cannot be doubted that mistakes are committed, and that peculiar privileges are sometimes conferred upon corporations which yield no fruit of public utility commensurate in value with the bestowment upon them. But where, as in the case of this insurance company, the powers conferred are, *prima facie*, such as will in their exercise operate a wholesome and beneficial influence upon the commerce, trade, and mercantile interests of the country, it is not the province of the judicial tribunals to revise the judgment of the legislature, as to the measure of public utility likely to result from the corporation. It is a matter determinable by the judgment, and involves the exercise of calculation and intelligence. The correct decision of the question as to the adequacy of the consideration which the usefulness of a corporation will afford for the privileges conferred, depends upon an intimate knowledge of all the great interests of the State, moral, social, educational, agricultural, commercial, mining, and mechanical, and an enlightened perception of the effect upon them of specific enterprises. It is improper, and impossible in the nature of things, that errors of the legislature in such a matter should be the subject of judicial cognizance.—President & Directors of the Bank of Newbern v. James Taylor, 2 Murph. (N. C.) 266 ; Patterson v. Trabue, 3 J. J. Marsh. 598 ; Yadkin Navigation Company v. Benton, 2 Hawks, 13 ; Hazen v. Union Bank, 1 Sneed, 115.

For the reasons which we have given, we do not regard a law unconstitutional which provides for the payment of

a specific sum in lieu of all other taxes by a corporation, the purposes of which are, *prima facie*, such as will benefit the public.

The provision in the charter of the appellant for the commutation of taxes, being a constitutional law, must remain the law until it is repealed. If the commutation feature of the charter be repealed, it is done by the Code. Section 391 of the Code, if construed without reference to the rest of that book, would undoubtedly repeal, by virtue of its repugnancy, the section of the charter which prescribes the bonus to be paid to the State. But section 10 of the Code expressly continues in force all special acts, or joint resolutions of the general assembly, in force at the adoption of the Code, incorporating companies for banking or manufacturing purposes, for the purpose of making roads, canals, or bridges, and for marine and fire insurance, or for any other purpose. The act of incorporation in this case is clearly within this list of laws preserved from repeal, and is, therefore, unrepealed, if it was in force at the adoption of the Code. Where the legislature, by the 10th section of the Code, preserved from repeal the act of incorporation under a comprehensive term, it must be understood that all parts of the act then unrepealed were continued in force. The part of the charter fixing the annual sum to be paid by the corporation, being continued in force by the Code, must be regarded as an exception to the general law embodied in section 391. It is only by so regarding it, that full effect can be given to section 10; and we must construe the law so that all parts of it may stand.

The general acts before the adoption of the Code, on the subject of taxation, are not such as will repeal the previous special law contained in the charter.

Until the legislature shall pass an act for the repeal of the commutation feature of the charter, the question of legislative power to make that feature irrepealable does not arise. Until the question shall, by such a repealing act, be raised and presented to us, we decline to pass on it.

The judgment of the court below is affirmed.