# Mobile & Spring Hill Railroad Company *v.* Kennerly.

*Action against Tax-Collector, for Money paid as Taxes.*

1. *Constitutional inhibition against exemption from taxation.*—The constitution of 1819, which was in force in 1860, contained no limitation or restriction upon the power of the General Assembly, in the imposition of taxes, to make discriminations or exemptions in favor of either individuals or corporations.

2. *Charter of corporation; inviolability as contract.*—The charter of a private corporation, when accepted, is an executed contract between the State and the corporators, and within the protection of the constitutional provision, State and Federal, against laws impairing the obligation of contracts; and it can not be amended or modified without the consent of the corporation, by subsequent legislation, unless the power of amendment is expressly reserved in the charter, or by some existing general law, or constitutional provision.

3. *Exemption from taxation, under charter of corporation.*—When an exemption from taxation, total or partial, is claimed by a private corporation under its charter, or act of incorporation, the courts require that the legislative intent to confer such exemption shall be expressed in clear and unambiguous terms; and if there is a just and reasonable doubt as to such intent, it is resolved against the corporation.

4. *Act incorporating Mobile and Spring Hill Railroad Company; limitation upon municipal taxation.*—Under the act incorporating the Mobile and Spring Hill Railroad Company, approved February 23d, 1860 (Sess. Acts 1859-60, p. 265), while it is declared that, in consideration of the privileges thereby granted, "the property of the company, and capital actually paid in, shall at all times be liable to the same rates of taxation as the property of individuals, and shall be taxed in no other way," the corporate authorities of the city of Mobile are authorized and empowered "to impose an annual taxation of one dollar on every one hundred dollars of the gross earnings of said company, which said tax," it is declared, "shall be in full and in lieu of all taxation by said city on such railway, its rolling-stock, equipments and appendages." *Held*, that these provisions indicate a clear legislative intent to exempt the corporation, to the extent specified, from all other municipal taxation than that expressly authorized.

5. *Same; how affected by change of municipality from city to port of Mobile.*—Whatever may be the legal relation existing between the "port of Mobile" and the former "city of Mobile," and the incidents attaching to that relation, the new corporation, like the old, has no power to impose on said railroad corporation any other tax or rate of taxation than that specified in said special charter.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by the appellant, a domestic corporation, chartered by an act of the General Assembly approved February 23d, 1860, against Lewis H. Kennerly, who was sued "as tax-collector under special act of the General Assembly of Alabama, entitled 'An act for the adjustment and settlement of the debts of the city of Mobile,' approved Dec. 8th, 1880;" and was commenced on March 22d, 1882. The complaint claimed $98.95, as money had and received, being the amount collected from plaintiff as taxes assessed against it for the year 1881, and alleged to have been paid under protest and by compulsion. The cause was tried on an agreed statement of facts, as follows:

"It is agreed, in this case, that the track of the Mobile and Spring Hill Railroad Company was laid in the year 1860, and that it commenced operations as a railroad during that year, under the charter granted to said company by the act of the General Assembly approved February 23d, 1860; that, subsequent to the grant of said charter, plaintiff obtained the consent of the corporate authorities of the city of Mobile to construct and use its railroad on St. Francis street and the Spring Hill road in said city of Mobile, and from and after the time said railroad was constructed as aforesaid, up to the passage of the act of the General Assembly approved February 11th, 1880, entitled 'An act to vacate and annul the charter and dissolve the corporation of the city of Mobile, and to provide for the application of the assets thereof in discharge of the debts of the said corporation,' the plaintiff paid annually to the mayor, aldermen and common council of the city of Mobile, but quarter-yearly, on the demand of the tax-collector of said corporation, one dollar of every hundred dollars of the gross receipts of plaintiff's said railroad. It is agreed, also, that the General Assembly passed an act approved February 11th, 1879, entitled 'An act to incorporate the port of Mobile, and to provide for the government thereof;' and that the said port of Mobile was organized under and according to said act. It is agreed, also, that from and after the passage of said last-named act, down to and including the year 1881, the plaintiff has annually paid to the corporate authorities of said port of Mobile, quarter-yearly, on the demand and call of the tax-collector of said port of Mobile, one dollar on every hundred dollars of gross earnings of plaintiff's said railroad; that the money herein sued for was claimed by defendant, as tax-collector, for taxes on plaintiff's railroad, equipment, stock, road-bed, and other real and personal property being within the said city of Mobile, for the year 1881, laid and assessed under and in accordance with an act of the

General Assembly approved December 8th, 1880, and the act amendatory thereto, for the payment and adjustment of the debts of the city of Mobile, and was paid by plaintiff under protest, and to obtain a release of its property levied on by said defendant as such tax-collector, as appears by the warrant for said taxes and the receipt therefor of said collector, hereto attached and made part of this agreed statement of facts. It is agreed, also, that either party may, on the trial and argument of this cause, use and refer to any act of the General Assembly of Alabama, general or special, or to any ordinance of the city of Mobile, bearing on the matters in issue ; and the same shall be considered as a part of this agreed statement of facts, as if herein incorporated by copy. It is further agreed, also, that it be submitted to the judge of the Circuit Court of Mobile county, to determine the law as applicable to these facts— whether said plaintiff is liable to pay said tax, or any part thereof ; and if the decision is for plaintiff, judgment shall be rendered against the defendant, for the proper sum, with costs; and if for the defendant, judgment for the costs shall be rendered against the plaintiff."

On these facts as admitted and agreed on, " the court charged the jury, at the request of the defendant in writing, that they must find for the defendant, if they believed the evidence." The plaintiff excepted to this charge, and it is now assigned as errror.

The 5th section of the plaintiff's charter, or act of incorporation, which was relied on as a grant of exemption from the tax imposed on it by the corporate authorities of the new municipality called the " Port of Mobile," contains the following. provision : " And for and in consideration of the privileges herein granted by the State of Alabama, the property of the company, and capital actually paid in, shall at all times be liable to the same rates of taxation as the property of individuals of Alabama, and county and city of Mobile, and shall be taxed in no other way: *provided*, further, that the corporate authorities of the city of Mobile be, and they are hereby, empowered to impose an annual tax of one dollar on every hundred dollars of the gross earnings of said company ; to be collected by the tax-collector of said city, whose duty it shall be to demand quarter-yearly of the president, secretary, or other financial officer of said company, statements under oath of the gross earnings of such railway, and at the same time to collect the tax then due thereon ; and said tax shall be in full and in lieu of all taxation by said city on such railway, its rolling-stock, equipments and appendages."—Sess. Acts 1859–60, p. 265.

The other statutes referred to in the agreed statement of facts, dissolving the charter of the city of Mobile, creating the

port of Mobile as a new corporation, and providing for the levy and collection of taxes, may be found in the Session Acts 1878–9, pp. 381, 392; and Session Acts 1880–81, pp. 329, 402.

R. P. DESHON, for appellant.—When the appellant's charter was granted, there was no constitutional provision in force prohibiting or restraining the General Assembly from granting an exemption of the property of a corporation from taxation, or authorizing a fixed payment in commutation of all other taxes. *Daughdrill v. Ala. Life Ins. & Trust Co.*, 31 Ala. 91; *Mayor v. Stonewall Ins. Co.*, 53 Ala. 577. The charter of the company, when accepted, became an executed contract, and could not be annulled or amended by any subsequent legislation, without its consent.—*Salt Co. v. East Saginaw*, 13 Wallace, 373; *Sala v. New Orleans*, 2 Woods, C. C. 188; *Daughdrill v. Ala. Life Ins. & Trust Co.*, 31 Ala. 91; *M. & O. Railroad Co. v. The State*, 29 Ala. 587; *Pearce v. Bank of Mobile*, 33 Ala. 701. The 5th section of the charter, while expressly reserving to the State the right of taxation for its own purposes, imposes a limit upon the power of taxation for municipal purposes; and this limitation can not be abrogated or disregarded, either by the State itself, or by any municipal corporation to whom the power of taxation for local purposes may be delegated. The contract is not between the corporation and the municipality then known as the city of Mobile, but between the corporation and the State; and the State can not delegate to any municipality of its own creation a power which it can not exercise for itself. Nor is an attempt to exercise such power to be implied from the mere change of name and other modifications made in the organization of this particular municipal corporation. As to the construction and validity of exemptions from taxation, see, also, Hilliard on Taxation, 357; *Railroad Co. v. Maguire*, 20 Wallace, 365; *Bailey v. Maguire*, 22 Wallace, 220.

J. L. & G. L. SMITH, *contra*.—The proviso to the 5th section of the appellant's charter is not mandatory on the city, but permissive only: the city was thereby authorized and empowered, but was not required, to levy and collect a tax of one per cent. on the gross earnings of the railroad company, instead of exercising its general power of taxation under the 37th section of its charter; and this was in lieu of other taxes, only so long as the city chose to elect to impose it. This gave a mere privilege, and not an absolute right which the appellant could demand.—*Ex parte Banks*, 28 Ala. 28. But, if there was in this proviso any contract at all, it was only during the life of the city of Mobile, and subject to the undoubted right of the State

to destroy the corporate existence of the city.—*Merriwether v. Garrett*, 12 Otto, 511; *Mayor v. Stein*, 54 Ala. 27. . The power of taxation delegated to the old corporation has ceased with its corporate existence; and the power of the new corporation to levy and collect taxes must be determined by its own act of incorporation. If the language of the appellant's charter, as to this exemption from taxation, were equivocal, the doubt must be resolved against the corporation, and against the restriction of the general power of taxation.—*Delaware Railroad Tax*, 18 Wallace, 206, 227; *Erie Railroad Co. v. Pennsylvania*, 21 Wallace, 499; 10 Penn. St. 450; 54 Ala. 23.

BRICKELL, C. J.—The questions argued by counsel are as follows: 1. What is the nature and character of the fifth section of the act of the General Assembly, approved February 23d, 1860, incorporating the "Mobile & Spring Hill Railroad Company?" is it a contract by which the State stipulated that no other than the taxation prescribed shall be imposed for municipal purposes by the authority of the State? or is it a privilege, or bounty, or exemption, conferred in mere generosity, or to serve a temporary policy, or temporary purposes, which may be withdrawn at the discretion of the legislative power? 2. If it is a contract, is it now obligatory, the municipal corporation known as the "City of Mobile," to which the contract refers, having been dissolved by legislative enactment, and a corporation created, purely municipal, under the name and style of the "Port of Mobile," having substantially the same corporators and the same territorial boundaries?

It may be remarked, that when the act of incorporation became a law, there was no constitutional limitation upon the power of the General Assembly, in the imposition of taxes, to make discriminations or exemptions, relieving the property of individuals or of corporations from the proportion of public burdens to which other property was subject. In this respect, the power of the General Assembly was unlimited, and controlled only by its own considerations of public utility.—*Daughdrill v. Ala. Life Ins. & Trust Co.*, 31 Ala. 91; *Mayor v. Stonewall Ins. Co.*, 53 Ala. 570. Private corporations were generally created by special enactment, and there was no general law, or constitutional provision, to which this special enactment was subordinate, subjecting it to amendment, alteration, or repeal, at the will of the legislature.

A long line of judicial decisions, State and Federal, has settled the doctrine, stated fully and accurately by Mr. Justice Clifford, in *Miller v. State*, 15 Wall. 488, that "corporate franchises, granted to private corporations, if duly accepted by the corporators, partake of the nature of legal estates; and the

grant, under such circumstances, if it be absolute in its terms,
and without any condition or reservation importing a dif-
ferent intent, becomes a contract within the protection of
that clause of the constitution which ordains that no State shall
pass any law impairing the obligation of contracts.    Charters
of private corporations are regarded as executed contracts be-
tween the State and the corporators; and the rule is well set-
tled, that the legislature, if the charter does not contain any
reservation, or other provision, modifying or limiting the nature
of the contract, can not repeal, impair or alter such a charter,
against the consent, or without the default of the corporation,
judicially ascertained and declared.    Subsequent legislation,
altering or modifying such a charter, when there is no such
reservation, is plainly unauthorized, if it is prejudicial to the
rights of the corporators, and was passed without their assent."
The power to alter, amend, or repeal, may be reserved in the
act of incorporation; and if so reserved, it qualifies the grant,
and the subsequent exercise of the power reserved does not
offend the constitutional inhibition of laws impairing the obli-
gation of contracts.    Or, if, as is now generally true, by consti-
tutional provision, or by a general law applicable to all acts of
incorporation, the State reserves to itself the power to alter,
amend, modify, or repeal such acts, there is a qualification of
the grant, rendering it subordinate to legislative power to the
extent of the reservation.

This doctrine, that the charter of a private corporation
granted by the State is a contract between the State and the
corporators, inviolable by subsequent legislation, has been of
most frequent application, probably, when into the charter is
introduced an exemption of the corporation from taxation, or
a substitution of a species or mode of taxation intended to be
less onerous than that to which individuals are subject, with-
drawing the corporation and its affairs, to the extent of the ex-
emption or substitution, from legislative control.    When the
benefit of such an exemption is claimed, the courts, upon high
considerations of public policy, have not sustained it, unless it
was conferred in terms clear and unambiguous.    If there is just
and reasonable doubt whether there is a legislative intent to
relinquish the power to tax, wholly or partially, the doubt is
solved in favor of the State, and not in favor of the corpora-
tion.—Cooley on Taxation, 146; *Providence Bank v. Billings,*
4 Peters, 514; *Wilmington Road v. Reid,* 13 Wall. 264; *City
Council v. Shoemaker,* 51 Ala. 114.    But, if the intent to relin-
quish the power is expressed clearly and unambiguously, and
the relinquishment is to be taken and deemed as a contract be-
tween the State and the corporators, it is the duty of courts to

give effect to it, as if it were a contract between private persons, touching their own private interests.

The provision of the act of incorporation now under consideration is in these words: "That the corporate authorities of the city of Mobile be, and they are hereby, empowered to impose an annual tax of one dollar on every hundred dollars of the gross earnings of said company, to be collected by the tax-collector of said city, whose duty it shall be to demand quarter-yearly of the president, secretary, or other financial officer of said company, statements under oath of the gross earnings of such railway, and at the same time to collect the tax then due thereon; and said tax shall be in full and in lieu of all taxation by said city on such railway, its rolling-stock, equipments and appendages," &c. The clause of the act immediately preceding this provision declares: "The property of the company, and capital actually paid in, shall at all times be liable to the same rates of taxation as the property of individuals of Alabama, and county and city of Mobile, and shall be taxed in no other way." The words of the statute are clear and unambiguous; the legislative intent expressed by them is not in the least uncertain or doubtful. The property of the company, and the capital actually paid in, are subjected to the same taxation, State and county, and no other, than that which is imposed on the property of individuals. There is a legislative guaranty, that in the imposition of State and county taxes there will be no discrimination against the corporation—that upon it no other than the just proportion of public burdens will be laid; that in this respect it shall stand upon an equality with natural persons. As to municipal taxation, or taxation by the corporate authorities of the city of Mobile, a mode and rate of taxation, with the manner of its collection, is prescribed; and this is declared to be "in full and in lieu of all taxation by said city on such railway, its rolling-stock, equipments and appendages." There could not have been employed words more clearly indicating the legislative intent to subject the railway of the corporation, its rolling-stock and appendages, to the mode and rate of taxation prescribed, excluding all other municipal taxation.

The purpose of conferring upon the appellant corporate existence and corporate franchises and privileges, was to enable it to construct a railway for the transportation of property and persons. This purpose was so far a public use, that to the corporation was delegated the sovereign power of eminent domain,—the power of taking private property for public uses upon making just compensation. It was, doubtless, in consideration of the purposes for which the corporation was created, purposes not often capable of being accomplished by individual

effort, or individual ability, and because every government finds it the better policy to lend all reasonable encouragement to the accomplishment of such purposes, that the legislature deemed it wise to afford the corporation a guaranty against unfavorable discrimination in the imposition upon it of State or county taxation, and to fix with certainty the municipal taxation to which it should be subject, relieving it from all other than that which is fixed and prescribed. The guaranty is as essentially a contract, as is any franchise or privilege granted to the corporation. If it be not—if the corporation is subjected to changing legislation; to discrimination against it in the imposition of State and county taxation, or to municipal taxation varying at the legislative will,—the corporate franchises and privileges, which are matter of contract beyond all dispute, are diminished in value. Public benefit is the object of every grant of corporate privileges; and it is the benefit derived from the corporation, which, in the case of a private corporation, converts the grant into an executed contract, when accepted by the corporators, inviolable by subsequent legislation.—Ang. & Ames Corp. § 13; *Daughdrill v. Ala. Life Ins. & Trust Co.*, 31 Ala. 91; *Home of the Friendless v. Rouse*, 8 Wall. 430.

There are donations or gratuities to individuals, and exemptions or privileges conferred upon corporations, proceeding from motives of mere generosity, or of State policy, of which no service or duty to be rendered, or other remunerative condition, forms a consideration, which may be revoked at the pleasure of the legislature.—Cooley on Taxation, 54. To this class of statutes, denominated *privilegia favorabilia*, belong the statutes which were the subject of consideration in *Dale v. Governor*, 3 Stew. 387; *Christ Church v. County*, 24 How. 300; *East Saginaw Salt Manufacturing Co. v. East Saginaw*, 19 Mich. 259; s. c., reported as *Salt Company v. East Saginaw*, 13 Wall. 373. The distinction between these cases, in which, to use the language of Mr. Justice Campbell, in *Christ Church v. County, supra*, "the concession of the legislature was spontaneous, and no service or duty, or other remunerative condition, was imposed on the corporation," and the case before us, is most manifest. The construction and operation of a railway, in its nature a public highway, the company operating it a common carrier, bound to the transportation of property and persons for a reasonable compensation, thereby promoting public and private convenience, were the benefits to the public, forming a consideration for the act of incorporation, including all its grants of rights and privileges.

It is not necessary now to determine the relation of the "Port of Mobile" to the former corporation of the "City of Mobile;" whether it is a new and distinct corporation, or a

mere continuation, under a new name, and the successor of the former municipality, bound by its obligations, and subject to its liabilities. The contract of which the appellant claims the benefit, was not made with the corporation known as the "City of Mobile," but with the State; and it is in restraint of the power of the State to confer or to delegate taxing powers to a municipality contravening its provisions. A municipal corporation has no inherent taxing power; the power it can rightfully exercise, is that which the State may deem it expedient to delegate. When the power is expressly delegated, the corporation can not relinquish it; nor within the delegation is there included any power to discriminate in the imposition of taxation, relieving particular property, or the property of particular persons, natural or artificial, from the burdens it may impose on the property of others of like kind. It may admit of doubt, whether the general statute of December 8, 1880, authorizing the municipal authorities to levy and collect an annual tax of three-fourths of one *per centum* on the value of all the real estate and personal property within the limits of the city of Mobile, was intended to affect or to repeal the special statutory provision incorporated in the charter of the appellant. Special legislation is not, generally, by implication repealed by subsequent general legislation relating to the same subject. However that may be, the charter of the appellant affords it immunity from any other municipal taxation than that which the State stipulated it should bear. The stipulation, it must be observed, relates only to the taxation of the railway, rolling-stock, equipments and appendages. It does not refer to any other species of property within the municipal boundaries, owned by the appellant, the legitimate subject of municipal taxation.

The Circuit Court erred in its rulings; and the judgment must be reversed, and the cause remanded.