THE CITY OF ZANESVILLE v. IMRI RICHARDS, AUDITOR OF MUSKINGUM COUNTY.

The 26th section of the act of March 11, 1853, to amend the act for the organization of cities and incorporated villages, (Swan's Rev. Stat. 988,) requires the auditor of the county to place upon the duplicate of taxes the per centage regularly levied and certified by the council of a municipal corporation, on all the real and personal property returned on the grand levy in such corporation.

The provisions of this section are in no way restricted by any provision contained in the special act creating such corporation, or by any implication arising from the 94th section of the act of 1852.   (Swan's Rev. Stat. 976.)

All such special acts are repealed by the last named act; and all exemptions of any part of the property in such corporation otherwise subject to taxation, from contributing to the general revenue fund, are in conflict with the second section of the 12th article of the constitution.

No tax, either for State, county, township, or corporation purposes, can be levied without express authority of law; and this section of the constitution is equally applicable to, and furnishes the governing principle for, all laws authorizing taxes to be levied for either purpose.

It requires a uniform rate per cent. to be levied upon all property according to its true value in money within the limits of the local subdivision for which the revenue is collected, subject only to the exemptions specifically provided for in the section.

A writ of mandamus will not lie to compel the county auditor to enter such tax upon the duplicate until the time arrives for making it up.

THIS is an application on behalf of the city of Zanesville, for a writ of peremptory mandamus, to compel the defendant, as auditor of Muskingum county, to enter upon the tax duplicate of the county, against all the lands within the corporate limits of

said city, the per centage regularly levied for city purposes in the year 1855.

The motion for the peremptory writ was filed in this court January 4th, 1856 ; and on the 9th day of the month an alternative writ of mandamus was issued by order of the court, commanding the defendant to place said taxes on the duplicate for the year 1856, or show cause by the 22d of January, why he refuses so to do.

The defendant, failing to place the taxes upon the duplicate, as directed in the alternative writ, returned the same, with his answer, stating the grounds of his refusal to place said levy for city purposes on the tax duplicate for the year 1855, against all the lands within the city limits, and setting up the non-existence of the duplicate for the year 1856, and the consequent impossibility of his complying with the command of the writ, or any order in the premises.

The questions presented by the alternative writ, and the answer thereto, are stated in the opinion of the court.

*A. P. Blocksom,* for plaintiff.

*Jewett & O'Neill,* for defendant.

RANNEY, C. J.

The city of Zanesville was organized under the provisions of a special act of incorporation, passed March 19, 1850 ; 48 O. L. 473. By the 6th section of this act, the city council was authorized to levy and collect taxes, to provide for the debts and to defray the current expenses of the city, with a limitation upon this power, expressed in these words : " But the said city council shall levy no tax upon any land or lands within the limits of said city, except for road purposes, unless the same is laid off into town lots, and recorded as such, agreeably to the laws of the State, or into out-lots not exceeding five acres each, and recorded as such, agreeably to the laws of the State of Ohio."

At the proper time in the year 1855, the city council, elected under the provisions of the act of May 3, 1852, to provide for

the organization of cities and incorporated villages, (Swan's Rev. Stat. 955,) and in accordance with the provisions of the 26th section of the amendatory act of March 11, 1853, (Swan's Rev. Stat. 988,) regularly certified to the county auditor the per centage by them levied for city purposes upon the real and personal property in the corporation, returned on the grand levy, in order that the same might be placed upon the duplicate, and collected as therein provided. But this officer, conceiving that the lands described in the 6th section of the original charter, were not legally subject to anything but the road tax, refused to enter against them the other taxes levied for city purposes. Whether or not he was justified in this refusal, presents the main question in the case. It certainly cannot be doubted, that the section of the act of 1853, to which reference has been made, in terms requires the auditor to place upon the duplicate the per centage regularly levied and certified by the council of a municipal corporation, on *all* the real and personal property returned on the grand levy in such corporation. It alludes to no exceptions, and allows of none. But it is claimed that all parts of the laws in force at the time, upon this subject, should be referred to, and such a construction be given them as will harmonize their various provisions; and that when this is done, the implication arising from the language of the 94th section of the act of 1852, is sufficient to justify the conclusion that the legislature intended the 6th section of the charter to continue in force, and the lands therein described to remain exempt from city taxes, until they were laid off in lots, and sold or leased by metes and bounds, or other description. We are of a different opinion. The 6th section of the 12th article of the constitution of 1851, required the general assembly to provide for the organization of cities and incorporated villages by general laws. In obedience to this requirement, the act of 1852 was passed; and, in the first section, repeals all previous acts for their organization or government. By the 109th section, those provisions of these special acts which related to the police regulations or local affairs of a particular corporation, were given a temporary continuance as by-laws or ordinances, until repealed by the proper authority thereof.

The 94th section certainly seems to imply that municipal corporations might exist, which were only authorized to tax lots when platted and recorded ; and seems intended to narrow the exemption by including those which were laid off and sold or leased, although not platted or recorded. With reference to the other provisions of the act, it is not an easy matter to give a proper construction and application to this section. Nor do we deem it necessary to make the attempt. The very last construction that should be adopted would be one that makes it conflict with the constitution ; and we are clear in the opinion, that if it means what is claimed for it, and intends to provide for the exemption of any part of the property in a municipal corporation otherwise subject to taxation, from contributing its proper proportion to the general revenue fund, it is in conflict with the second section of the 12th article of that instrument, and should be treated as a nullity. Before the adoption of the present constitution, the whole matter of taxation was committed to the discretion of the general assembly. It might be levied upon such property and in such proportion, as that body saw fit. The right to make exceptions and exemptions, was unquestionable. But this discretion no longer exists. The public burdens are made to rest upon the property of the State, and whenever money is to be raised by taxation, the positive injunction is, that " laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise ; and also *all* real and personal property, according to its true value in money." Without express authority of law, no tax, either for State, county, township, or corporation purposes, can be levied ; and we see no reason to doubt, that this section of the constitution is equally applicable to, and furnishes the governing principle for, all laws authorizing taxes to be levied for either purpose. The great object of the provision was to secure equality and uniformity in the imposition of these public burdens. The convention was very well aware that much the largest part would be required to answer the purposes of these local subdivisions ; and equally well, that it could only be levied as the general assembly should provide. In establishing this principle of justice and

equality, they have necessarily made it the fundamental rule upon which all such laws must be based ; and its spirit and purpose can only be preserved by holding that it requires a uniform rate per cent. to be. levied upon all property, according to its true value in money, within the limits of the local subdivision for which the revenue is collected; subject only to the exemptions specially provided for in the section. In any view, therefore, of the construction to be placed upon the 94th section of the act of 1852, the exemption claimed for any part of the real estate within the limits of the city, cannot be sustained. If it is open to the construction contended for, either by implication or otherwise, it is repugnant, not only to other parts of the enactment, but also to the constitution of the State; and according to the holding in *Exchange Bank* v. *Hines*, 3 Ohio St. Rep. 1, may be treated as a nullity without affecting the legality of the general levy. To avoid all misapprehension, we should add, that while this opinion extends to all laws providing for taxation, within the meaning of that term as used in the constitution, it by no means follows that it necessarily covers the whole ground included within the limits of the taxing power. Whether the constitution itself has not provided for the exercise of this power under the name of " assessments," resting upon other principles and modes of exercise, and if so, what are the limits and proper application of this mode of imposing public burdens, are questions now before us in other cases, which will be disposed of upon their own merits.

For the reasons given, we are brought to the conclusion that the defendant should have entered against all the lands within the city, the taxes regularly levied for city purposes ; and there can be no doubt that the writ of mandamus is the proper remedy to enforce the performance of this public duty. But this writ only lies when the officer is legally empowered to perform the judgment of the court. In accordance with law, the duplicate for 1855 has gone out of the hands of the officer, and he has no further power over it ; and the time has not yet arrived for making up that for 1856. To require these taxes to be entered

upon the first, would be to exact an impossibility ; and to order them to be entered upon the last, when the proper time shall arrive, is to assume that he will then, without coercion, refuse to perform his legal duty. We are not authorized to make any such presumption ; and as this writ was presented too late for the one purpose, and too soon for the other, we are of the opinion that it should be dismissed, and judgment be given for the defendant.

<em>Judgment accordingly.</em>