# Mayor, &c., of Mobile *v.* Stonewall Insurance Company.

## *Action to Recover Taxes.*

1. *Constitution; rules for construction of.*—A State constitution must always be interpreted in the light of the common law, and if it be not the first constitution, must be read in the light of its predecessors.

2. *Same.*—New provisions intended to guard against evils which the former constitutions did not prevent, must be so construed as to secure the purposes for which they were introduced, and these purposes are to be ascertained from a just consideration of the causes in which they originate.

3. *Art. 13 Sec. 4 of Constitution of 1868, construed.*—Under article 13 section 4 of the constitution of 1868, it is within the legislative competency to declare that a certain species of property, which is subject to taxation, shall bear only a certain prescribed rate of municipal taxation.

4. *Same.* — The General Assembly has no power, in imposing taxes, whether collected directly by the State, or through any of its subordinate municipal divisions, to distinguish or discriminate in favor of corporate property ; if property is taxable when owned by an individual, it must bear the same rate of taxation when owned by a corporation.

5. *Mobile; power of to tax capital stock.*—The city of Mobile, under the 37th section of its charter, has authority to impose a tax upon the shares of capital stock of an insurance company located and doing business in that city, whether it be deemed "capital employed" in business, or "personal property."

6. *Act ; what unconstitutional.*—The "act to restrict the power of taxation as required by § 16, Art. 12 of Constitution" of 1868, approved Feb. 23rd, 1875, is unconstitutional.

APPEAL from Circuit Court of Mobile.

Tried before Hon. H. T. TOULMIN.

The Mayor, Aldermen and Common Council of Mobile, a municipal corporation, brought this action against the Stonewall Insurance Company, a domestic corporation, to recover a balance of a municipal tax, assessed by the corporate authorities on the defendants' capital stock, employed in business during the year 1875.

The case was tried on an agreed state of facts, without the intervention of a jury, and the court rendered judgment for the defendant.

VOL. LIII.

[Mayor of Mobile v. Stonewall Ins. Co.]

The defendant is a corporation, chartered under the laws of this State, and doing business in the city of Mobile. The municipal authorities assessed a tax upon its capital stock at the rate of one dollar and fifty cents upon one hundred dollars, or at the rate of one and a half per cent., which is the general rate of municipal taxation, and assessed against all taxable property in the city. The defendant paid sixty cents on the hundred dollars of the tax, but refused to pay the remaining ninety cents on the hundred dollars of its capital stock, and hence this suit.

STEPHEN CROOMS and HERNDON & SMITH, for appellant. —Section 4 of article 13 of the constitution declares, that "the property of corporations now existing, or hereafter to be created, shall be forever subject to taxation, the same as the property of individuals, except corporations for educational and charitable purposes." The correct construction of this section not only requires that the property of corporations shall be subject to tax, but that it shall be taxed, the same as the property of individuals is taxed. If not, why insert the superfluous words "the same as the property of individuals"?

"It is of the very essence of taxation that it should be equal and uniform. Where the burden is common, there should be common contribution to discharge it." Cooley's Con. Lim. 479; 4 Wheaton, 428; 51 Penn. State, 9; 9 Wisconsin, 410; 16 Michigan, 269; 3 Ohio, 15. When such glaring discriminations are attempted as here, it is not taxation, but spoliation. *Loan Association* v. *Topeka,* 20 Wallace, 663.

The proposition that the provisions of the constitution do not apply to municipal taxation is utterly unsound. The State cannot confer on its creatures greater power than it possesses. 5 Ohio, 593; 11 La. Annual, 41; 2 Dillon, §§ 593–629. Neither by any sound construction can it be held that the people, in imposing a duty on the legislature to restrict the powers of taxation by cities and towns, thereby armed it with power to discriminate in favor of corporations in matters of taxation. All the sections of the constitution show an intention not to discriminate in favor of corporations. Where it restricts municipal taxation, the restriction must be uniform. It is not taxation where the legislature declares that a citizen's money is taxable, but a corporation's funds are not, except at a reduced rate.

W. G. JONES and P. HAMILTON, *contra.*—The purpose of

section 4, article 13, of the constitution, was not to prohibit the legislature from exempting property of corporations from taxation, if it saw fit, but to guard against the evil of irrepealable exemptions. Its purpose was not that such property must be taxed, but that it should remain subject to taxation, if any succeeding legislature should wish to withdraw an exemption conferred by a former one.

This section, even if the construction we have given it is incorrect, applies only to State taxation. 2 Dillon's Municipal Corporations, §§ 592–4.

The acts in question, limiting the right to tax the capital of insurance companies and other such companies to sixty cents on the one hundred dollars of value, are, on general principles, clearly within the legitimate authority of the legislature. They cannot be held void by this court, unless it is shown clearly that they are in violation of the constitution.

BRICKELL, C. J.—This cause was tried and determined in the court below, without the intervention of a jury, on an agreed state of facts. The material facts are, that the appellee is a corporation, created under the laws of this State, located and doing business in the city of Mobile, having, in the year 1875, a capital stock, employed in its business, exceeding in value one hundred thousand dollars. On this, as on other property subject to taxation within the city, the appellants regularly assessed a tax for the year 1875, of one and a half per centum on the value thereof. The appellee paid sixty cents of this tax, and refusing to pay the remainder, for its recovery this suit was commenced. The circuit court adjudged the appellants were not entitled to recover, and from that judgment this appeal is taken.

The city of Mobile is one of the most ancient of the municipalities of the State. It was first incorporated by an act of the territorial legislature of the " Mississippi Territory," on the 20th January, 1814, by the name and style of "President and Commissioners of the Town of Mobile," and clothed in general terms with the power of taxation. Laws of Ala. 780. It has existed since as a municipal corporation, its corporate powers and duties being from time to time enlarged, as its growth in population and commerce demanded. At no time has the power to levy and collect taxes for municipal purposes, originally conferred, been diminished by legislative enactment; but it has been extended so as to embrace the different subjects of property, or from which profit could be derived, introduced within its corpor-

[Mayor of Mobile *v.* Stonewall Ins. Co.]

ate limits, in its growth from a town to a city. The act of incorporation under which it now exists is entitled " an act to incorporate the city of Mobile," and was approved February 2d, 1866. Pamph. Acts, 1865–6, p. 202. The 37th section of this act empowers the corporation "to levy taxes on the real and personal estate, auction sales, and sales of merchandise, *capital employed in business,* and income within said city, and a head tax upon all the male inhabitants over the age of twenty-one and under sixty." The rate of taxation which the corporate authorities could assess and collect was not prescribed. Until the constitution of 1868, municipal corporations, created by special enactment, were but seldom confined to any particular rate of taxation. The officers charged with the power and duty of levying and collecting municipal taxes were elective by the inhabitants on whom the taxes were to be imposed, and the official term was of brief duration ; thereby affording, as was supposed, ample security against other taxation than such as the municipal necessities required. The 21st paragraph of the 5th section of the general revenue law of the State, approved March 19,1875, fixes the rate of State taxation on the market value of the capital stock of private corporations, and contains this clause : "No municipal corporation shall levy on any such corporation or the shares of its stock, for any purpose, or under any name, any tax, taxes or imposts, greater than sixty cents on the one hundred dollars—except a license tax, when such is allowed by law." On the 23rd February, 1875, an act was approved, entitled "an act to restrict the power of taxation as required by section 16, of article 12, of the constitution of this State," which reads as follows : "Section 1. Be it enacted by the general assembly of Alabama, that the several cities and incorporated towns of this State may respectively levy and collect from banks, and banking insurance companies, associations and corporations chartered or organized under the laws of this State, located and doing business within their respective limits, a tax upon the market value of the capital stock of each of such banks, and banking and insurance companies, associations and corporations, at the same rate, per hundred dollars, as may be levied and collected by the State for State revenue, and no more, to be paid by the said banks, and banking and insurance companies, associations and corporations, in full of all taxes, imposts or assessments for municipal purposes, upon the said capital and business, and upon the shares of their capital stock : *provided,* said tax shall not exceed sixty cents on the hundred dollars value on such capital stock; and

said municipal corporations, and each of them, are hereby restrained from levying on, or collecting from, said companies, associations or corporations, their capital, business, or shares, any larger or greater tax than hereinbefore named, under any name or pretense of tax upon capital, profits or income, or business whatever: *provided*, that any real estate owned by said banks, banking and insurance companies, associations or corporations, shall be subject to the same rate of taxation as similar property, otherwise owned or subject to taxation for municipal purposes; and *provided*, said municipal corporations may demand and receive from each of said companies, associations or corporations, a license tax not exceeding one hundred dollars.

"Section 2. Be it further enacted, that all laws and parts of laws in conflict with the provisions of this act be, and the same are hereby repealed."

The 13th article of the constitution of 1868, referred to in the title of this act, is entitled " corporations," and the 16th section is : "It shall be the duty of the general assembly to provide for the organization of cities and incorporated towns, and to restrict their power of taxation, assessment and contracting of debt." The 4th section is: "The property of corporations now existing, or hereafter created, shall forever be subject to taxation, the same as property of individuals, except corporations for educational and charitable purposes." Immunity from any greater municipal taxation than sixty cents on the one hundred dollars of the market value of its stock, is claimed by the appellees to have been granted by the acts to which we have referred. The appellant affirms these acts are in conflict with the section of the constitution last quoted.

The constitution has separated the powers of the government it ordains, classifying them, according to their differing and distinguishing characters and properties; and declares each class "shall be confided to a separate body of magistracy. Those which are legislative to one ; those which are executive to another; those which are judicial to another." The legislative power is vested in the general assembly, and comprehends the full and complete law-making power residing in the people of the State, subject to the limitations and restrictions imposed by the constitution. It does not comprehend the exercise of power violative of the limitations and restrictions of the constitution of the United States—no such power resided in the people from whom the constitution emanates, and of consequence could not be by them conferred. The judicial

[Mayor of Mobile *v.* Stonewall Ins. Co.]

power—the power of determining, interpreting, and administering the existing law—is committed to the courts established by the constitution, or which it authorizes the general assembly to establish.   The constitution of the State, not encroaching on the powers delegated to the government, or the limitations on State authority imposed by the constitution of the United States, is the paramount, supreme law, of primary obligation.   All legislative enactments are subservient to it, and if they conflict with it, are without validity.   When such enactments affect public or private right, and become the subject of judicial controversy, judicial power arises.   On the court clothed with the jurisdiction to hear and determine the controversy, *to declare the right*, interpret and administer the existing law, rests, of necessity, the responsibility of adjudicating the constitutionality of the enactment.   It is the gravest and most delicate duty the judiciary are commanded to perform.   It is a duty peculiar *to the institutions of our country ;* elsewhere the judicial is subordinate to the legislative power, and owes to it implicit obedience.

The preservation of the constitution in its integrity, obedience to its mandates, is exacted alike from the legislative and the judicial departments of the government.   Each are co-ordinate, not subordinate departments; each, in its constitutional sphere, is separate and distinct from the other.   The obligation resting on each is common ; the duty resting on the judicial department cannot arise until the legislative has exercised its power, and mindful of its obligations, has declared that without invading constitutional limitations, a law shall exist.   When the judicial department is invited to declare the legislative has invaded the constitution it was under obligation to preserve, though it cannot shrink from the inquiry, it will approach it with caution, examine the question in every possible aspect, standing as an impartial arbiter between the co-ordinate departments of the government, subject to the obligation from which its duty arises, and the party complaining of wrong, bound to accord to the legislative department the presumption that it has not transcended its powers—will not, unless it is clear that the enactment and the constitution cannot co-exist, pronounce a sentence of nullity.

The constitutional provision supposed to have been offended by the enactments under which the appellee claims immunity from the taxation the appellant seeks to recover, has a history which must be consulted, in determining its just interpretation.   A provision akin to it is found in the

same article of the constitution : " Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws and special laws passed pursuant to this section, may be altered, amended or repealed." These provisions were for the first time, by the constitution of 1868, introduced into the fundamental law of the State. That constitution was merely the successor of the constitutions preceding it. Its purpose was not an adaptation only of the organic law to the changed political condition of the people, and to conform it to the new relations springing from the amendments of the federal constitution, and the conditions imposed by congressional enactment. It was intended also to cure defects time had developed in former constitutions—to narrow and restrain legislative power in the instances experience had shown it most liable to abuse. Under former constitutions the taxing power was not defined, qualified, or restrained by any other provision than the simple declaration : "All lands liable to taxation in this State shall be taxed in proportion to their value." On personal property, taxes, either specific or *ad valorem*, could be imposed as the legislature deemed best. Slaves, formerly the chief subject of taxable personal property, were uniformly taxed, not according to value, but a specific tax was levied, graduated by the age of the slave. On other articles of personal property, such as watches, clocks, &c., a specific, not an *ad valorem* tax, was imposed. The inequalities of this mode of taxation were the cause of complaint, and we find in the constitution of 1868 the provision, which has been generally introduced into the later constitutions of our sister States: "All taxes levied on property in this State shall be assessed in exact proportion to the value of such property." The general assembly could confer on municipal corporations, for municipal purposes, the power of taxation it could exercise without the agency of such corporations. No governmental power is more easily abused, or more often perverted, than the taxing power. Possessing it without limitation, municipalities resorted to it too often without a just regard to the interests of the tax payer. To prevent the abuse of the power, to protect the citizen subject to it, the framers of the constitution were not satisfied with the mandate addressed to the general assembly, found in the 16th section of the 13th article, to which we have referred, but they expressly provided : "The general assembly shall not have power to authorize any municipal corporation to pass any laws contrary to the general laws of the State, *nor to levy a tax on real and personal property to a greater ex-*

[Mayor of Mobile *v*. Stonewall Ins. Co.]

*tent than two per centum of the assessed value of such proper-*
*ty."* Art. 4, § 36. The mandate to the general assembly
was to restrict power. A limitation beyond which the cor-
poration could not pass, and within which it must be re-
strained, the extent of corporate power, was defined by the
clause last quoted. There cannot be a just interpretation—
an interpretation which will consummate the intent of the
people in the adoption of these and other constitutional pro-
visions—which is not deduced, not only from their language,
but from their history—from the causes to which they owe
origin—the mischief they were intended to remedy. In
respect to the constitution of the United States, it is said
" the safest rule of interpretation is to look to the nature
and objects of the particular powers, duties and rights, with
all the lights and aid of cotemporary history, and to give to
the words of each just such operation and force, consistent
with their legitimate meaning, as may fairly secure and attain
the ends proposed." 1 Story's Const. § 405 A. In its con-
struction statesmen and jurists are accustomed to consider
the evils for which no remedy was found in the articles of
confederation, and against which the constitution intends to
guard. The construction uniformly adopted, if permitted
by the words, is that which will avoid such evils. A state
constitution is always interpreted in the light of the common
law, and if it be not the first constitution, in the light of its
predecessors. The guaranties for the security of property
and of personal liberty, found in the bill of rights, are bor-
rowed chiefly from *magna charta*, and for their interpretation
we look to the common law. New provisions, having their
origin in larger experience, introduced into an amended or
revised constitution, are to be construed and allowed such
operation as will secure the purposes for which they were
introduced; and these purposes are to be ascertained from a
just consideration of the causes in which they originate.

The decision of the supreme court of the United States
in *Dartmouth College* v. *Woodward*, 4 Wheat. 518, estab-
lished the legislative inviolability of the charters of private
corporations. " Those charters of incorporation," says Mr.
Cooley, " which are granted, not as a part of the machinery
of the government, but for the private benefit or purposes
of the corporators, stand upon a different footing, and are
held to be contracts between the legislature and the corpora-
tors, having for their consideration the liabilities and duties
which the corporators assume by accepting them; and the
grant of the franchise can no more be resumed by the legis-
lature, or its benefits diminished or impaired without the

37

consent of the grantees, than any other grant of property or valuable thing, unless the right to do so is reserved in the charter itself. Const. Lim. 279. In " The Delaware Railroad Tax," 18 Wall. 225, Judge Field says " that the charter of a private corporation is a contract between the state and the corporators, and within the provision of the constitution prohibiting legislation impairing the obligation of contracts, has been the settled law of this court since the decision in the Dartmouth College case. Nor does it make any difference that the uses of the corporation are public, if the corporation itself be private. The contract is equally protected from legislative interferences, whether the public be interested in its franchise, or the charter be granted for the sole benefit of its corporators." The consequence of this doctrine, settled beyond controversy, by judicial decision, is forcibly expressed by Mr. Cooley : "It is under the protection of the decision of the Dartmouth College case that the most enormous and threatening powers in our country have been created ; some of the great and wealthy corporations actually having greater influence in the country at large, and upon the legislation of the country, than the State to which they owe their corporate existence. Every privilege granted or right conferred—no matter by what means or on what pretense—being made inviolable by the constitution, the goverment is frequently found stripped of its authority in very important particulars, by unwise, careless, or corrupt legislation ; and a clause of the federal constitution, whose purpose was to preclude the repudiation of debts and contracts, protects and perpetuates the evil. To guard against such calamities in the future, it is customary now for the people, in framing their constitutions, to forbid the granting of corporate powers, except subject to amendment and repeal; but the improvident grants of an early day are beyond their reach." Const. Lim. (Note 2), 279. The object and scope of the 1st section of the 13th article of the constitution, so far as it is now involved, is clearly stated in the last sentence of this paragraph—the prohibition of the grant of the corporate power to private corporations, except subject to repeal or amendment at the legislative will. Municipal corporations, mere governmental agencies, were completely subject to legislative control. Whenever they failed to accomplish the purposes for which they were instituted, or, when the exercise of the powers conferred on them became unnecessary, or, when the exercise of the power was embarrassing to the general power of the government, the legislative power that created, was plenary to de-

[Mayor of Mobile v. Stonewall Ins. Co.]

stroy, or alter or modify. Subjection of private corporations to the same extent to legislative power, as if the power was expressly reserved in each charter of incorporation, was the purpose of the constitutional provision.

The inviolability of charters of private corporations was not the only evil against which it was necessary to guard. The whole matter of taxation rested in the power of the legislature. Exemptions from, commutations of, or discriminations in taxation, if not inhibited by constitutional provision, resided within the power of the legislature. The power to tax private corporations was sometimes relinquished, in consideration of the public benefits anticipated from their creation. In the creation of the greater part, if not all, of the private moneyed or commercial corporations which were created prior to 1861, a commutation of taxation was a prominent feature of the charter. Referring only to the charters of banks incorporated after the winding up of the State banks, we find the "Southern Bank of Alabama," incorporated February 12th, 1850, with a provision in its charter that it should pay annually to the State twice the tax assessed on lands, on each hundred dollars of its capital stock, "in lieu and composition of all taxation whatever, by the State, county, city or other authority." Precisely a similar provision is found in the charter of the "Northern Bank of Alabama," and in the charter of the "Central Bank of Alabama." The "Alabama Life Insurance and Trust Company" was incorporated under a charter providing for the payment of a specific sum, *as a full commutation for all taxes, impositions or assessments on the capital stock*. The provision was sustained by this court. *Daughdrill* v. *Ala. Life Ins. & Trust Co.* 31 Ala. 91. Entire or partial exemption from taxation temporarily has been frequently granted corporations formed to pursue branches of industry, the encouragement of which it was believed a wise public policy required. All exemptions from taxation necessarily increase the burdens imposed on the property not exempt, and are directly injurious to the tax payer. The incidental benefits which it is supposed may result to him, in common with the community at large, are speculative, and not often a compensation for the immediate injury sustained. Invidious exemptions or discriminations, by which the property of an individual, or of a corporation, is relieved from bearing a just proportion of the common burden taxation is intended to discharge, are violative of the equality of right of the citizen, which is a fundamental principle of our institutions. To prevent any exemption or discrimination in

[Mayor of Mobile *v.* Stonewall Ins. Co.]

favor of corporations, to subject their property to the same
rate of taxation to which the property of individuals of the
same kind is subject, is the purpose of the constitutional
provision, clearly expressed: "The property of corporations
now existing, or hereafter created, shall forever be subject
to taxation, the same as property of individuals," &c. The
argument of the appellee, that it was intended only to re-
serve to the legislature the power of subjecting corporate
property to the taxation imposed on individuals, and to
avoid the introduction into charters of irrepealable exemp-
tions or discriminations, cannot be supported. That purpose
was fully accomplished by the 1st section of this article of
the constitution. That section is of itself a full reservation
of legislative power, and an ample guaranty against irrepeal-
able exemptions or discriminations, or the introduction into
charters of any feature not under the control of legislative
power. It did not remedy the entire evil to which the com-
munity had been subjected by legislative improvidence in
the creation of corporations. Temporary exemptions or
discriminations in taxation in favor of corporations, to the
prejudice of the individual citizen, with that section, was
within the province of legislative power. These exemptions
or discriminations could have been granted, and would have
continued, until the inequality and injustice became so
grievous that the people compelled the legislature to remove
them. Temporary as the injury to the individual may have
been, the framers of the constitution did not intend it should
ever exist. The 4th section was therefore added, in itself
self-executing, without the aid, in fact in restraint, of legis-
lative power, subjecting corporate property to the taxation
imposed on individuals. If this is not the effect of that
section, it has no office to perform, and is without signifi-
cance. All that it can accomplish would have been accom-
plished by the 1st section. Reading these constitutional
provisions in the light of their history, and with a due re-
gard to the words in which they are expressed, it is impos-
sible for us to doubt that it was not competent for the gen-
eral assembly, in the imposition of taxes, to distinguish or
discriminate in favor of corporate property subject to tax-
ation. If property of a particular kind is subjected to tax-
ation, and owned by a corporation, it must bear the rate of
taxation imposed on individuals. While the constitution
inhibits the exemption or discrimination in favor of corpor-
ations, it equally inhibits a discrimination against them.
Equality in bearing a common burthen, which is natural

right and equity, is secured alike to the corporation and to the citizen.

The constitution of Iowa contains a provision identical in meaning, if not in words, with the provision of the constitution of 1868, under consideration. It reads: "The property of all corporations for pecuniary profit shall be subject to taxation, the same as that of individuals." In *The City of Davenport* v. *C. R. J. & P. R. R. Co.* 38 Iowa, 633, it was the subject of construction, and was declared mandatory, requiring the legislature to provide for taxation of the property of corporations for pecuniary profit, the same as that of individuals. A statute releasing railroad companies from certain taxation to which individuals were subject, was declared violative of it. The court say: "What are we to understand to be intended by the language 'the same as that of individuals'? We need not determine whether this language requires that corporate property shall be taxed *in the same manner* as that of natural persons. It seems, however, quite clear that it was intended by this language to require the legislature to impose the *burdens* of taxation upon the property of corporations for pecuniary profit, the same as, or equally with, that of individuals; that each shall be taxed for the same objects, and in the same degree, so that individuals shall not be required to pay any taxes on their property which have not also been assessed and laid upon the property of corporations of the class named, nor in any greater proportion. When the legislature provides for taxing the property of individuals, this clause of the constitution requires it to tax the property of corporations for pecuniary profit to the same extent and for the same purposes. If the property of individuals be taxed for State, county, school and municipal purposes, the property of this class of corporations must be subjected to the same taxes, and at the same rates. The one cannot be exempt, and the other liable."

A more palpable infraction of the constitution than this case presents, could hardly occur. The capital of individuals, of the same kind, of no greater value, employed in the same or a like business with that of the corporation, if the legislative acts are valid, is subjected to ninety per cent. greater taxation than that the corporation bears. A donation from the tax paid by individuals is in effect made to the corporation. It participates with the individual in all the reciprocal benefits taxation secures; the burden apportioned to it does not correspond to the benefits. This is the favoritism, the inequality, and injustice, against which the constitutional provision is directed. If capital employed in the

business appellee is pursuing, or if moneyed capital, and that is its real character, without regard to the manner in which it may be employed, when not invested in visible, tangible property, its representative, and a subject of taxation, will not bear a greater rate of municipal taxation than six-tenths of one per cent., it is competent for the legislature so to declare. It is not within its competency to declare that corporate capital can bear only that rate of taxation, while individual capital is subject to the rate of taxation the municipality may assess, so long as it does not exceed two per centum, the maximum prescribed by that constitution.

It is observable the immunity claimed is found in a clause of the general revenue law of the State, subjecting corporations to the same rate of State taxation imposed on individuals, and in a *proviso* to another statute first purporting to subject corporations only to the rate of municipal taxation imposed for the State. We suppose this was on the hypothesis, now pressed on the court, that the constitutional subjection of corporations to the same taxation imposed on individuals applied only to State, and was not applicable to municipal taxation. A municipal corporation is a mere governmental agency, organized by legislative enactment, "to share in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town or district which is incorporated." 1 Dill. Munic. Cor. § 10. It is said by Lord Holt to be, "an investing the people of a place with the local government thereof." 1 Salk. 183. Whatever of power is delegated to them, whether it be of the power to tax, or of the other powers of the legislative department, is the power of the State. Its nature is not changed by its delegation to the corporation. Before its delegation it resided in the legislature, and was capable of exercise by it, through any instrumentality it should appoint. In *Knowlton* v. *Supervisors of Rock County,* 9 Wisc. 410, constitutional provisions requiring uniformity of taxation were examined as to their bearing on municipal taxation, and among other propositions affirmed, is : "The levying of taxes by the authorities of a county, city, or town, for their support, is as much an exercise of the taxing power as when levied directly by the State for its support. The State acts by the municipal governments, and their acts in levying taxes are as much the act of the State as if the State acted by its own officers." A discrimination in municipal taxation, in favor of personal and against real property, was declared violative of the constitution. The

same question was presented to the supreme court of the United States, in *Gilman* v. *City of Sheboygan*, 2 Black. 510. Following the decision of the supreme court of Wisconsin, these propositions were affirmed : (1) "The levying of taxes by a public corporation, under the authority of State law, is the exercise of the taxing power, as much as the taxation of the citizens directly for the support of the State government;" (2) "The constitution of Wisconsin requires the rule of taxation to be uniform ; and this means that all kinds of property not absolutely exempt must be taxed alike, by the same standard of valuation, equally with other taxable property, and co-extensive with the territory to which it applies." The constitution of Ohio provides : "Laws shall be passed taxing, by a uniform rule, all moneys, cred- .its, investments in bonds, stocks, joint stock companies, or otherwise ; also all real and personal property, according to its true value in money." The supreme court of Ohio say : "Without express authority of law, no tax, either for State, county, township, or corporation purposes, can be levied, and we see no reason to doubt that this section of the constitution is equally applicable to, and furnishes the governing principle for, all laws authorizing taxes to be levied for either purpose. The great object of the provision was to secure equality and uniformity in the imposition of these public burdens. The convention was very well aware that much the largest part would be required to answer the purposes of these local subdivisions ; and equally well, that it could only be levied as the general assembly should provide." *Zanesville* v. *Auditor*, 5 Ohio St. 592. In *Mayor, &c.* v. *Dargan*, 45 Ala. 318, a municipal tax not levied according to the value of the property on which it was imposed, was held violative of the 1st section of article 9 of the constitution, requiring all taxes to be assessed in exact proportion to the value of the property on which they may be levied.

The constitutional provision is broad enough in its letter to comprehend all taxation the legislative power can impose. It is not material whether the imposition is by the legislature, through its own independent action, or by its agencies exercising power it has conferred. It is the taxing power of the State, and discriminations in favor of corporations, and against individuals, in the exercise of this power, are inhibited. The heaviest taxation in the State prior to, at the time of, and since the adoption of the constitution of 1868, was, and is, that imposed by municipalities. The evils of discrimination, of partiality in the imposition of such taxation, are of consequence more

[Mayor of Mobile *v.* Stonewall Ins. Co.]

perceptible and acute than those resulting from taxation for the general purposes of the State. Restraints and limitations of municipal taxation were, as we have seen, carefully introduced into the constitution, when it was intended to distinguish it from the general taxation of the State. In the provision under consideration no such distinction is made, and the language, in its ordinary signification comprehends all taxation. The evil against which the constitutional provision is directed would be but partially remedied, if, by construction, the provision is limited to State as distinguished from municipal taxation. Invidious exemptions, inequality, injustice in the imposition of taxes, in the most odious form, and in that to which the people are most sensitive, would remain within the legislative power. Exemption from municipal taxation, by the payment of a bonus to the State, in the words of the bank charters to which we have referred, "in lieu and composition of all taxation whatever, by the State, county, city, or other authority," was the immunity most often sought, and most often accorded to private corporations. The prohibition of such immunity in the future, and the subjection of corporations to a community and equality of burthen with the citizen, in the matter of taxation, is the constitutional mandate, obedience to which is not to be avoided. The manifest purpose of the statutes under consideration is to restrain municipal taxation within narrow limits, when imposed on corporate property, leaving it unrestrained, except by the constitutional limitation, when imposed on individual property. The result, and the inevitable result, the case illustrates. If these statutes are valid, the individual citizen of Mobile must pay a tax of one and a half per centum on the capital he has employed in business; while the appellee and other moneyed corporations pay but six-tenths of one per centum on their capital. The constitutional mandate that " the property of corporations shall forever be subject to taxation, the same as property of individuals" is vain, if these statutes do not offend it.

We are constrained to declare the statutes violative of the constitution, and that the appellee is liable to the tax imposed by the appellants.

Whether the capital employed by the appellee is deemed *capital employed in business, or personal property,* the power to tax it is conferred on the city, by the 37th section of the act incorporating it. The title to, and the possession and use of, the capital, resides in the appellee, and its taxation

to the appellee was the rightful method of imposing the tax. Cooley on Taxation, 273.

The judgment of the circuit court is reversed, and the cause remanded.