Burket, J.
This case has been argued with marked ability on both sides, and the arguments have greatly aided the court in reaching its final conclusions.
We have carefully examined and considered all the cases cited by counsel, and many others, and shall state rather the conclusions reached than lengthy arguments in support thereof.
The first section of the statute in question is as follows:
Section 1. Beitenactedbythe General Assembly of the State of Ohio, That all property within the jurisdiction of the state, and any interest therein, whether belonging to inhabitants of this state or not, and whether tangible or intangible, including annuities, which shall pass by will or by the intesr tate laws of this state, or by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor, to the *324 use of the father, mother, husband, wife, brother, sister, niece, nephew, lineal descendant, adopted child, or person recognized as an adopted child and made a legal heir under the provisions of section 4182 of the Revised Statutes of Ohio, or the lineal descendant thereof, the lineal descendant of any-adopted child, the wife or widow of a son, the husband of a daughter of decedent, or of any one in trust for such person or persons, shall be liable to a tax as follows, to-wit: When the value of the entire property of such decedent exceeds the sum of twenty thousand dollars and does not exceed the sum of fifty thousand dollars, one per cent.; when it exceeds fifty thousand dollars and does not exceed one hundred thousand dollars, one and one-half per cent. ; when it exceeds one hundred thousand dollars and does not exceed two hundred thousand dollars, two per cent.; when it exceeds two hundred thousand dollars and does not exceed three hundred thousand dollars, three per cent.; when it exceeds three hundred thousand dollars and does not exceed five hundred thousand dollars, three and one-half per cent.; when it exceeds five hundred thousand dollars and does not exceed one million dollars, four per cent.; and when it exceeds one million dollars, five per cent.; seventy-five per cent, of such tax to be for the use of the state, and twenty-five per cent, for the use of the county wherein the same is collected ; and all administrators, executors and trustees shall be liable for all such taxes, with lawful interest, as hereinafter provided, until the same shall have been paid as hereinafter directed. Such taxes shall become due and payable immediately upon the death of the decedent, and shall at once become a lien upon said property.! ’
*325 It is this first section that is claimed to be unconstitutional, and which was so held by the circuit court.
In view of the authorities cited, it must be conceded that the general assembly has the power to pass an inheritance tax for purposes of general revenue, unless prohibited by the constitution of our state. Properly understood, it is not the right to transmit, but the right and privilege to receive, that is taxed. The right to dispose of property during the lifetime of the owner, cannot be separated from the property itself, and therefore to tax the right of disposal by contract in the lifetime of the owner, even though to take effect at his death, is to tax the property itself. But the right -to dispose of the property by will or descent taking effect after the death of the owner, is not so closely connected with the right of property, and it is not so clear that such right may not be taxed.
But when the right to receive the property is considered, it is clear that the right is distinct and separate from the property itself, and the state may tax this right to receive property, and this is so whether the property is disposed .of by the owner during his lifetime, or at his death.
This right to receive property is under the control of the legislature, and it has the power to regulate and lay such burdens thereon as it may see fit, within the provisions of the constitution. To regulate by taxation or otherwise the privilege or right to receive property, is not in conflict with the first section of the Bill of Rights, which recognizes the inalienable right of acquiring, possessing and protecting property. Were it otherwise, all our laws as to wills, descent, distribution and conveyances would be unconstitutional.
*326 It is urged, however, that the statute in question does not tax the right or privilege of receiving property, but taxes the property itself.
It must be conceded that the language used in the statute, is upon its face clearly a taxation of the property itself, and not of the right to acquire property. And for myself, I think this is the true construction of the act. Others of the court, however, think that when the operation and effect of the statute are considered, that it may be regarded as taxing the right or privilege, rather than the property. Certain it is that the only thing that can be constitutionally taxed is the right or privilege of succession, and a statute having such taxation in view, should express its purpose in words applicable to such subject matter of taxation.
It is conceded by all parties, that if this statute imposes a tax on property, that it is unconstitutional. As a majority of the court are of opinion that it is not a tax on property, but upon the right to receive property, the statute must, as to this point, be sustained.
It is also contended that this tax is a tax on property because it is made a lien upon the real estate received, and cases are cited sustaining this view. Estate of William Bittinger, 129 Pa. St., 344.
The statute in that case provides as follows: “The tax on real estate shall remain a lien on the real estate on which the same is charged until paid. ’ ’ While the statute in this state provides simply that the inheritance tax “shall at once become a lien upon said property.” But aside from the difference in the words of the statute there is no force in the contention. If the legislature has the power to assess a tax upon the right to receive *327 and succeed to property, it clearly lias the right to make such tax a lien upon the property received by the use of such right; and the making of such lien does not change the tax from a tax upon the right to receive, to a tax upon the property received under the right.
Next, it is urged that if the statute imposes a tax' only upon the right or privilege to receive property, that as the taxation thereby imposed is for general revenue, it is in conflict with section 2 of article 12 of the constitution, which provides that laws shall be passed taxing by a uniform rule all property according to its true value in money. The claim is that for purposes of general revenue property only can be taxed.
The constitution is silent as to the application of the fund arising on taxation on subjects other than property. The constitution being- silent, it follows that if such taxes can be levied and collected at all, that their application is within the sole and exclusive power and discretion of the general assembly.
' The power of taxation, without limitation, is given in section 1, article 2 of the constitution, which provides that-. “The legislative power of this state shall be vested in a general assembty, which shall consist of a senate and house of representatives.’'
In Western Union Telegraph Co. v. Mayer, 28 Ohio St., 521, it was held that the general grant of legislative power vested in the general assembly by this section, includes the power to collect revenue for public purposes, and the limitations on the exercise of this power are to be found in other provisions of the constitution.
*328 In Hill v. Higdon, 5 Ohio St., 243, it is said by the court.: “In our present constitution, as well as in the. former, the general grant of legislative authority includes the power of taxation in all its forms. Restrictions upon its exercise are to be looked for in other parts of the instrument. ’ ’
The power of taxation, granted in the first section of the second article, being unlimited, is broad enough to include the power to tax rights, privileges and franchises. Is there any limitation upon this power found in any other section of the constitution ?
The only section which it is claimed limits this power is section 2 of article 12; that section is in the following words: “Laws shall be passed, taxing by a uniform rule; all moneys, credits, investments in bonds, stocks, joint stock companies or otherwise; and also all real and personal property, according to its true value in money; but burying grounds, public houses, houses used exclusively for public worship, institutions of purely public charity, public property used exclusively for any public purpose, and personal property to an amount not exceeding in value two hundred dollars for each individual, may, by general laws, be exempted from taxation; but all such laws shall be subject to alteration or repeal; and the value of all property so exempted shall, from time to time, be ascertained and published, as may be directed bylaw.”'
It-will be noticed that this section is not a limitation upon the power to tax rights, privileges and franchises, because the limitation by this section imposed is as to the taxation of property, that is, moneys, credits, investments in -bonds, stocks, joint stock companies, or otherwise and also real *329 and personal property. Nothing- whatever is said about rights, privileg’es or franchises, and therefore this section cannot fairly be construed as a limitation of the power to tax rights, privileges and franchises, unless they are property within the meaning of this section of the twelfth article.
That a franchise is not property, within the meaning of said section, was held by this court, for reasons which seem unanswerable, in Hine v. Exchange Bank, 3 Ohio St., 1. The court say, on page 8, “A corporate franchise, therefore, being a mere privilege, or grant of authority by the government, is notjproperty of any description, and consequently not subject to taxation under the above provision of the constitution. ’ ’
It will be noticed that the court here say that a franchise is not such property as can be taxed under the above provisions of the constitution; the provisions referred to'are those contained in section 2, of article 12.
That a franchise is valuable, and in that sense property, has sometimes been held, but it is not property in the sense used in said section of the constitution, and its taxation is not by that section limited or restricted.
With the power of taxation of rights, privileges and franchises, granted by the first section of the second article, unlimited and unrestricted by other parts of the constitution, what authority is there to limit and restrict this kind of taxation to purposes other than for g-eneral revenue.? No warrant therefor is found in the constitution.
This court in Hine v. Exchange Bank, supra, after quoting the second section of the twelfth article on page 10, by Bartley, C. J., says: “The manifest effect of this constitutional provision is *330 to make property the basis and the sole basis, of taxation. ” Again, on page 40, the court, by Thurman, J., says: “The objects of taxation declared in that instrument are the real and personal property and ehoses in action in the state.”
The part of the constitution under consideration was the second section of article 12, and nothing whatever is said about the general grant of power found in section one of article two. Throughout the whole ease of Hine v. The Exchange Bank, section 2, of article 12, is regarded as the granting of the power of taxation, instead of a limitation and restriction of the general power granted in section 1, of article 2. That such is not the true or correct construction of the constitution is now universally conceded. That construction was not necessary to the decision of the question then before the court, but it did not lead to an incorrect determination of that case. It mattered not in that case whether the grant of power of taxation was found in section 1 of article 2, or in section 2 of article 12; nor whether section 2, of article 12, was a grant of power of taxation or a limitation of the power granted by the other section of the constitution. The question for determination in that case was as to taxation of banks under section 3, of article 12, and that led to the question as to whether section 2, of that article, permitted the deduction of debts from moneys and credits. The question before the court had relation to property only, and construing section 2, of article 12, as a grant of power, instead of a limitation of power granted in another section, and as nothing’ except property is spoken of as taxable in said section 2, the court held that what was therein expressed as taxable, bjr implication excluded *331 everything else, and therefore announced the rule that under said section the sole basis of taxation, is property. That property is not the sole basis of taxation, under the power granted by section 1, of article 2, appears by many decisions of this court, among which are the following: Telegraph Co. v. Mayer, 28 Ohio St., 533; Baker v. Cincinnati, 11 Ohio St., 540; Adler v. Whitbeck, 44 Ohio St., 565, 9 N. E., 672; Anderson v. Brewster, 44 Ohio St., 585, 9 N. E. 683; State ex rel. v. Reinmund, 45 Ohio St., 214; 13 N. E., 463; Ashley v. Ryan, 49 Ohio St., 504; 31 N. E., 721; Metz v. Hagerty, 51 Ohio St., 521.
The error of regarding the second section of article 12 as a grant of power of taxation, instead of a limitation upon that power, was carried into the decision of the ease of Zanesville v. Richards, 5 Ohio St., 589, but was partly corrected in Hill v. Higdon, 5 0. S., 243, and fully corrected in Reeves v. Treasurer, 8 Ohio St., 333. The court, on page 592, in 5 Ohio St., by Ranney J., says: “The public burdens are made to rest upon the property of the state, and whenever money is to be raised by taxation, the positive injunction -is, that “laws shall be passed, taxing by a uniform rule, all moneys, credits, interest in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money. ”
That the public burdens are not made, by the constitution, to rest exclusivly upon the property of the state, is shown by the cases above cited, and that which is spoken of as an injunction that laws shall be passed taxing- by a uniform rule all moneys, etc., is, instead of an injunction, a restriction and limitation upon the general power of taxation granted by section 1, of article 2. In the *332 Zanesville case, supra, the question was whether an exemption of lands, not laid out into lots within the city of Zanesville, from all taxes except for road purposes, was constitutional. The second section of article 12 was again regarded as the source of the power of taxation; but as only taxes on property were under consideration, this led to no erroneous results in- that case; and the court held that all lands within the city limits must be taxed for all purposes for which lots were taxed. The court say: u No tax, either for state, county, township, or corporation purposes can be levied without express authority of law, and this section of the constitution is equally applicable to, and furnishes the governing principle for, all laws authorizing taxes to be levied for either purpose. ’ ’
If by the applicability and governing principle, is meant equality of taxation of property without exemption, that is, that when some property in a city is taxed for state, countjq township or corporation purposes, all property within the city must be taxed for the same purposes without exemption, it is correct. But if it means, as we think it does not, that subjects of value, other than what are regarded property within said section, can not be taxed for state, county, township or corporation purposes, it is incorrect. That the former was meant, clearly appears from the subject matter under consideration. The question as to the taxation of rights, privileges and franchises was not under consideration, and the language used is not applicable thereto.
Speaking of the 94th section of the tax law, the court say, on page 592, that it seems to imply that municipal corporations might exist, which were authorized to tax only such real estate as was laid *333 out into lots when platted and recorded. The court do not so construe that section, and say that if so construed it would conflict with section 2 of article 12. The question under consideration being whether lands within the city not laid out into lots could be taxed for purposes other than road purposes, the court say: “We are clear in the opinion, that if it (94th section) means what is claimed for it, and intends to provide for exemption of any part of the property in a municipal corporation otherwise subject to taxation, from contributing its proportion to the general revenue fund, it is in conflict with the second section of the twelfth article of that instrument, and should be treated as a nullity.”
This is the first time in the line of decisions that “general revenue'1'1 is mentioned. It will be noticed that it is property, and not franchises, that cannot be exempted from contributing to the “general revenue” fund. It will further be noticed that is is not stated here that only tax on property can contribute to the general revenue fund. Tbe full force of the decision is that property cannot be exempted from contributing- to the general revenue fund.
The court, in the Zanesville case, say, that property can not be exempted from contributing to the general revenue fund, and when reference is made to that case in the case of Hill v. Higdon, 5 Ohio St., 243, the word property is still retained, the court saying, on page 246: “In the case of the City of Zanesville v. Richards, decided at the present term, we have held that this section is equally applicable to, and furnishes the governing principle for, all laws levying taxes for general revenue, whether for state, county, township, or *334 corporation purposes; and that it requires a uniform rate per cent, to be levied upon all property, according to its true value in money, within the limits of the state, or the local subdivisions for which the revenue is collected.” The governing principle here referred to is that all property shall be taxed according to its true value in money, when raising’ revenue for state, county, township or corporation purposes, and that there can, in such cases, be no exemption of property, except as provided in said section. This very clearly appears when the whole case is read, and by what immediately precedes the part above quoted. The question in the case was whether special assessments for street improvements were constitutional or not. There was no question involved whether or not general revenue could be raised by a tax on franchises or privileges, and what is said as to taxation for general revenue is to showthat in raising-general revenue there can be no exemption of property, other than is provided in section 2 of article 12. And when the court say, on page 249, that “the'second section of the twelfth article has established the principles upon which all taxes for general revenue purposes must be levied,” the principles referred to are the principles of equality, and that all property must be taxed without exemption, as provided for in said section. That this is so is shown by the language used by the court, the subject-matter under consideration, and the fact that those are the only principles found in said section. General revenue is not mentioned in the section.
In order to sustain assessments for street improvements, the court, in this case of Hill v. Higdon,, abandoned the position that the second sec *335 tion of article 12 was the source of the power of taxation, and the concession was made that “the general g-rant of legislative authority includes the power of taxation in all its forms,” and that “Restrictions upon its exercise are to be looked for in other parts of the instrument. ’ ’
The doctrine and line of decisions that general revenue cannot be raised otherwise than by a tax on property are both based upon the above eases of Hine v. Exchange Bank, Zanesville v. Richards, and Hill v. Higdon, none of which support the doctrine, but decide that in raising general revenue all property must be taxed without exemption, as provided in said second section.
The cases following the above three cases refer to the doctrine as well understood and settled by those cases without examining the doctrine anew to see whether or not it is well founded. The doctrine is not necessary to a proper decision of any of the cases in which reference is made thereto, and all of them not heretofore overruled were correctly decided without its aid, including Wasson v. Commissioners, 49 Ohio St., 622, and Railway v. State, 49 Ohio St., 189. In none of those cases is the doctrine sustained that general revenue cannot be constitutionally raised by taxation on franchises, rights and privileges, but the doctrine sustained is that when general revenue is to be raised by taxation on property, all the property of the state, county, township or corporation must be taxed without exemption, as provided in said section 2 of article 12 of the constitution.
It follows, therefore, that imposing the tax in question upon the right to receive property does not render the act unconstitutional.
Next it is urged that the statute in question is *336 in conflict with section 26, of article 2 of the constitution, which provides that: “All laws of a general nature shall have a uniform operation throughout the state. ” This section of the constitution is not intended to guarantee the equal protection of all the inhabitants of the state, but only to provide that laws of a general nature shall be in full and equal force in all parts of the state. State v. Nelson, 52 O. S., 88, and cases there cited.
In the next place it is urged that the statue in question is unconstitutional in this, that it exempts estates of twenty thousand dollars and under from all taxation, and in case the estate exceeds twenty thousand dollars it taxes the entire estate without any exemption whatever, and also in this, that large estates are taxed at a higher rate per cent, than smaller ones.
Section 2 of the bill of rights provides as follows : “ All political power is inherent in the people. Government is instituted for their equal protection and benefit. ’ ’
This statue is in direct conflict with this section of the bill of rights. If government is instituted for the equal protection and benefit of the people, it follows that laws which are passed under a government so instituted, must likewise be for the equal protection and benefit of the people. This statue fails to protect equally the people who exercise the right and privilege of receiving or succeeding to property. The right to receive the first twenty thousand dollars of an estate not exceeding’ that sum, is protected from taxation, while the right to receive the first twenty thousand dollars of an estate exceeding that sum is taxed the sum of two hundred dollars; This is not equal *337 protection. Again, the right to receive fifty thousand dollars’ worth of property of an estate not exceeding that sum is taxed five hundred dollars, while the right to receive fifty thousand dollars of an estate exceeding that sum is seven hundred and fifty dollars. This is not equal protection. The same may be said of the other gradations provided for in the statute.
The right or privilege of receiving or succeeding to property is valuable in proportion to the value of the property received. It cannot be consistently said that the right to receive twenty thousand dollars is of no value, and that the right to receive twenty thousand and one dollars is of the value of two hundred dollars and one cent.
Again, he who uses the right or privilege of receiving property of the value of twenty thousand and one dollars, and pays therefor a tax of two hundred dollars and one cent, is not equally benefited for the tax paid, as he who uses the the same right or privilege of receiving property of the value of ■ twenty thousand dollars, without paying any tax whatever for the use of such right. The exemption of twenty thousand dollars, and the increase of the per cent, as the value of the estate increases, renders this statute unconstitutional.
Our constitution requires equality in our tax laws, and also equality in their execution as near as may be. The only exemption allowed, as to taxation of property, is personal property to the amount of two hundred dollars to each individual, and certain other property devoted to public or charitable uses. Two hundred dollars in value to each individual is the extent to which the legislature has the power to exempt personal property *338 from taxation. The constitution must be regarded as consistent with itself throughout, and as section 2, of article 12, permits an exemption from taxation of personal property not exceeding two hundred dollars a construction of section 2 of the bill of rights is thereby evinced to the effect that in taxation of subjects other than property, an exemption up to two hundred dollars in value would be regarded as for the equal protection and benefit of the people. The exemption must be equally for all, and the rate per cent, must be the same on all estates. There can be no discrimination in favor of the rich or poor. All stand upon an equality under the provisions of the constitution, and it is this equality that is the pride and safeguard of us all. It was this principle, more than any other that induced the decision in Hocking Coal Co., v. Rosser, 52 O. S., 12.
In support of the law it is urged that this exemption and gradation may be sustained upon the ground that the costs of administration in a small estate are proportionately larger than in a large one, and that therefore the small estate should be free from this taxation. The answer is that equality in taxation is required by the constitution, and that our administration laws are enacted upon the principle of equal protection and benefit of the people, and this unequal mode of taxation is not required to remedy any defect in the burdens of these laws.
Again, it is urged in support of the law, that an estate not exceeding- twenty thousand dollars is in the nature of a necessity for the support of widow and children; that the widow and children succeeding to so moderate a property ought to be exempted from paying the state anything for that *339 privilege. The answer to this, as well as to the former proposition, is, that we are not here considering the policy or equity of this exemption, but the power of the legislature to make such discrimination, when prohibited from so doing by the second section of the bill of rights. When this power is once conceded, the manner of exercising the same, is limited only by the will of the legislature. In determining constitutional questions, courts should not attempt to solve them by reasoning’ only along’ the lines of the principles of equity, but the reasoning should be along the lines of the constitution, for it may be that the very object of-the constitution is to abandon and cut loose from what had theretofore been regarded as equity in particular cases, or upon a particular subject matter. The question is therefore, not what would be equitable, but what is constitutional. Equity cannot be permitted to override the constitution.
Again, it is urged in favor of the statute, that the state has the right to say that the heir or legatee or devisee of a large property enjoys a disproportionate privilege, because what he receives is in the nature of a luxury, and luxuries ought to be subject to higher taxes. The answer to this is that the value of the right to receive is in direct proportion to the value of the property received, and must under the constitution be taxed accordingly, if taxed at all. As to the higher tax on luxuries, it may be said that such a rule might find a place in tariff legislation, where all are free to indulge in the luxuries or not as they see fit, but that such rule can find no support in taxation, under a constitution requiring equality in taxation, and laws to be for the equal protection and benefit of all.
*340 Again, it is claimed .in favor of the law, that this statute is not purely for the raising- of revenue, but for the regulation of the succession and transfer of property, and that the state has a right to say that it. will regulate the matter of succession to great estates, by making a greater charge for the privilege, and thus discourage the holding together of great estates until death.
The answer is, that the matter of succession and transfer of property is already fully regulated by our statutes as to wills, descent, distribution and conveyances, and if further regulation is desired purely as regulation, aside from revenue, it would most likely be sought in the amendment of those statutes.
The act is clearly one for taxation and not for regulation, as shown by its provisions and title. The state finds no warrant in its constitution for saying that it will make a greater rate or charge for the privilege of succeeding to large estates than to smaller ones, but on the contrary this is expressly prohibited by the requirement that laws shall be for the equal protection and benefit of the people. This requirement applies as well to laws for regulation as to laws for taxation. It is also contended by those opposing- the law, that the statute is inoperative, for the reason that it fails to provide any machinery for the collection of a tax levied on property which passes by “deed, grant, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor.” Whether there is sufficient machinery supplied in this and other statutes, to enforce collection of said tax, need not now be determined, as that question is not involved in this case, and does *341 not go to the constitutionality of the statute, but to its enforcement, if found constitutional.
As to the first section of the fourteenth amendmentto the constitution of the United States, which provides that no state shall “deny to any person within its jurisdiction the equal protection of its laws,” it is sufficient to say, that the provisions of this section of the federal constitution, as to this question, are not broader than the second section of our bill of rights, and that therefore a statute * upon this subject, authorized by our bill of rights, would not be in conflict with this section of the constitution of the United States.
While the facts in the case of Railway v. Connelly, 10 Ohio St., 159, said to have been followed and relied upon by the circuit court, bear little if any relation to this ease, the rule of decision in that case was in line with the second section of oiir bill of rights, and was therefore very properly followed by the circuit court.

Judgment affirmed.

Minshall, C. J., dissents from judgment of affirmance.
Shauck, J., concurs in the third and fourth propositions of the syllabus, and in the judgment of affirmance.