## L. W. PRATT, APPELLANT, VS. CITY OF JACKSONVILLE, APPELLEE.

1. Section 1 of Article IX of the Constitution of this State of 1885, that "the Legislature shall provide for a uniform and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as shall be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes," has reference to State taxation, or taxation for State purposes. The provision that "the Legislature    *    * shall prescribe such regulations as shall secure a just valuation of all property," does not apply to municipal taxation.

2. Under the fifth section of Article IX of the Constitution of this State all power of municipal corporations to assess and impose taxes must be granted by the Legislature, and all property taxed by such corporations must be taxed upon the principles established for State taxation, i. e., upon principles of uniformity, equality and just valuation, but it is not essential that specific regulations for securing such uniformity, equality and just valuation should be prescribed by the Legislature. Where the power to assess and impose the tax is given by the Legislature, specific regulations for securing uniformity, equality and just valuation may be prescribed by the city council.

Appeal from the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*A. W. Cockrell & Son*, for Appellant.

The Constitution provides, Art. 9, sec. 1, as follows: "The Legislature shall provide for a uniform and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes."

Further provision is made, as follows: Sec. 3. "No tax shall be levied except in pursuance of law."

The Constitution in itself, makes no provision for a uniform and equal rate of taxation—it declares the Legislature *must* do it. Nor does the Constitution in itself make any regulations to secure a just valuation of property. It ordains that the Legislature *shall prescribe* such regulations as shall secure a just valuation of *all* property.

These constitutional provisions open the doors of the courts to the property holder, whose property is seized or about to be sold for the non-payment of an alleged tax, to have adjusted. 1st. Whether or not the Legislature *had provided*, in that behalf, for a uniform and equal rate of taxation. 2d. Whether or not the Legislature had prescribed such regulations as secured a just valuation of property, as a basis of taxation; and 3d. Whether or not said tax has been levied and assessed in pursuance of such *provisions and regulations*.

And by his petition, the appellant impleaded the city of Jacksonville, to have these questions adjudicated. The court below decided the tax was lawfully assessed, and by this appeal he asks the judgment of the Supreme Court on these questions.

We do not insist it is the province of the court to pronounce judgment on the *adequacy* of the legislative *provisions*, by which a uniform and equal rate of taxation is *sought* to be reached; nor do we claim it is the province of the court to determine whether or not the regulations *prescribed* by the Legislature are such as produce in all cases a just valuation. Our contention is that before any tax can be adjudged valid, it must appear to the court, that *provision* has in fact been made for a uniform and equal rate of taxation; and that regulations have been prescribed to secure a just valuation of property; and that this provision, and these regulations have been made and prescribed by the Legislature; and lastly that the alleged tax has been in fact levied and assessed in accordance with *this* provision and *these* regulations.

The legislative act incorporating the city of Jacksonville, Chapter 3775, approved May 31st, 1887, sought to conform to the constitutional mandate, in respect to "providing for a uniform and equal rate of taxation" and "prescribing such regulations as shall secure a just valuation of property" for taxation, in sec. II, Article XII, page 178, laws of Florida, which placed within reach of municipal taxation only such property as was subject to State taxation, and then enacted as follows: "The assessment of taxes shall be made by the recorder, under the laws by which such property is assessed for State and county purposes, but the valuation shall not exceed those imposed for State and county purposes."

So the law remained until May 31, 1889, when by sec. II, Ch. 3053 of the laws of Florida, p. 198, the above copied clause was repealed, and the following clause was substituted: "The assessment shall be made by the Comptroller and his assistants, and the

valuation of real and personal property shall be subject to be increased or diminished by the council under regulations to be made by ordinance." At the session of 1887, the Legislature which enacted sec. I, Art. XII, p. 178 Ch. 3775, declaring that assessments made upon property for municipal taxation, "Shall be made by the recorder under the laws by which such property is assessed for State and county purposes," also enacted a general revenue law for State and county purposes, Ch. 3681, entitled "an act for the assessment and collection of revenue." And, indeed, for many successive bienniels prior thereto, State and county taxation had been provided for, under the same title, and in the same general way. Indeed the Legislature of 1889 which repealed that clause of sec. I, Art. 12, p. 178, and substituted in its stead the one quoted above, at the same session, amended, in particulars wholly foreign to the present questions, Ch. 3681.

And so when the clause, hereinbefore quoted of sec. I, Art. 12 of the act of 1887, was passed, as well as when it was repealed, and the other clause substituted, the methods of assessment for State and county taxations, and the safeguards, in this great body of law provided, for a uniform and equal rate of taxation, and the regulations therein prescribed for securing a just valuation of property for taxation, and the meaning of the terms and words therein employed, had become well known to the people of the State. These methods, safeguards and regulations had been so defined, by legislative and judicial construction, through the process of inclusion and exclusion continued for many years, as to have acquired a fixed interpretation in the popular apprehension. And as it was, when it was provided in sec. I, Art. 12, p. 178, of the laws of Florida of 1887, that the recorder of the city of Jackson-

ville, in making assessments for municipal taxation, shall "preceed" under the laws by which such property is assessed for State and county purposes," the constitutional requirements hereinbefore quoted were fully met. But this body of laws securing, as demanded by the Constitution, the tax payer against unconstitutional taxation, was stricken down by sec. II, Ch. 3953 of the laws of Florida, approved May 31st, 1889.

The question is does the substituted legislation make such provision "for a uniform and equal rate of taxation," and "prescribe such regulations as shall secure a just valuation of property" for taxation, as the Constitution ordains the legislation shall *provide* and *prescribe* before a legal tax may be imposed?

Bearing in mind, the Constitution in and of itself does not make the provision, nor prescribe the regulations, required to insure a uniform and equal rate of taxation, but simply enacts of the Legislature that it shall make this provision and prescribe these regulations, before a legal tax can be levied and assessed; let us consider:

1. The substituted legislation in itself.

2. As compared with the body or law for which it is substituted.

The language of this substituted legislation is:

"The assessments shall be made by the Comptroller and his assistants and the valuation of real and personal property shall be subject to be increased or diminished by the council under regulations to be made by ordinance."

As the municipal authorities in and by the section in which this clause is found, are *absolutely* relieved of the obligation, theretofore resting upon them in making assessment, to proceed "under the laws by

which such property is assessed for State and county purposes," it is manifest the *only* law put upon them by the Legislature is to be found in the substituted clause which we have quoted at length.

So far from this clause requiring that the council shall observe a uniform and equal rate of taxation, and so far is this clause from prescribing regulations necessary to secure a just valuation of property, there is not a single provision therein looking to such uniformity and equality, nor is there a single regulation therein prescribed to secure a just valuation of property. On the contrary the legislative provisions and regulations, insuring uniformity and equality, and a just valuation, and the *only* legislative provisions and regulations theretofore existing, and still existing to protect the tax payer in respect of State and county taxation, are repealed so far as they affect taxation by the city.

If it be said that the Constitution, sec. 5, Art. 9, ordains that "cities and unincorporated towns shall make their own assessments for municipal purposes upon property within their limits," we grant this; but it is clear all the power municipalities *can* claim, they derive from the Legislature, *under* the Constitution.

The entire power of taxation resides in the Legislature, restrained only by the limitations of the Constitution. But the Legislature *can not* transfer this power of taxation to a municipality *freed* from the limitations of the Constitution.

And so it is, when the Legislature seeks to authorize a municipality to tax property the constitutional obligation is upon it, to *provide* for uniformity and equality, and to *prescribe* regulations to secure a just valuation, as a basis for taxation; and nullifies alike all levies and assessments whether made by itself, or

a municipality, the creature of its hands, if legislative provision is not *theretofore* made, securing uniformity and equality, and legislative regulations are not theretofore *prescribed* for just valuation of property for taxation. Nor can the Legislature, under this mandate of the Constitution, escape responsibility for this necessary legislation, by imposing the duty of prescribing such "provisions and regulations" upon the municipality. In the substituted legislation quoted, the Legislature did *not* in fact put or seek to put upon the city of Jacksonville the constitutional duty devolved upon the Legislature in that behalf; nor was the council required to prescribe provisions securing uniformity and equality, and a just valuation of property as the basis for taxation.

The provision of the charter is, "the assessments shall be made by the Comptroller and his assistants, and the valuation of real and personal property shall be subject to be increased or diminished by the council, under regulations to be prescribed by ordinance."

And this is the *only* expression of the legislative will on this subject. Surely, we submit, this legislation does not meet the constitutional requirements put upon the Legislature in that behalf.

What regulations, *prescribed* by the Legislature, direct and control the council, in reaching a just valuation. Suppose by chance, in some hap-hazard way the council have *in fact* attained a *just* valuation. It is obvious the charter of Jacksonville, in the section quoted, repeals and discards, as a regulation for the council, the regulations now prescribed by statute, for securing a just valuation of property for State and county taxation; and in lieu thereof the Legislature fails to provide *any* regulation whatever for securing a just valuation of property in the city of Jacksonville

for municipal taxation. 9 Col. 635, S. C. 21 Pac. Rep. 476.

The question then recurs, how far is a municipality, under the limitations of the constitutional pre-requisites to taxation, in Florida.

"A municipal corporation is a mere governmental agency. Whatever of power is delegated to it, whether the power to tax or of legislation is the power of the State, its nature not changed by its delegation to the corporation. Taxation by municipalities is but taxation by the State through its agencies instead of by independent action." Mayor vs. Stonewall Ins. Co., 53 Al. 570; (3 Br. Dig. p. 770, sec. 184).

"Levy and assessment have very different meanings. The levy of taxes is a legislative function and declares the subject and rate of taxation. Assessment is quasi judicial, and consists in making out a list of the taxpayer's taxable property—embracing all subjects of taxation—and fixing its valuation and appraisement. The Legislature prescribes the rule of action, and the assessor administers that rule to persons and subjects that fall within its provisions;" Perry Co. vs. S. M. & M. R. R., 65 Ala. 391; 49 N. J. Eq. 51; 30 N. J. Eq. 677.

The Constitution of 1868 did not permit the Legislature to authorize cities and towns to *assess* and *impose* taxes for corporation purposes; that Constitution conferred upon the Legislature the power to authorize corporations to *impose* but *not* to *assess* taxes for corporation purposes. Corporations could acquire from the Legislature only the power to impose taxes, taking for the basis thereof the assessment that is the listing and valuation made by the State for State purposes.

The present Constitution does empower the Legislature to authorize municipal corporations, not only to impose taxes, but also to assess for taxes.

It will hardly be claimed that this constitutional provision is self-executing; nor can it be claimed that a municipal corporation is authorized, in the absence of legislation so providing, to *assess* taxes for municipal purposes.

Conceding—without discussing it in this connection—that a delegation of power to assess involves or contains the power to prescribe the regulations required to meet the equality and uniformity prescribed by the Constitution, let us ascertain upon whom and to what extent, and in what terms, the Legislature has *in fact* conferred this power, to assess taxes for municipal purposes.

The provision of the charter, in that behalf, as it now exists, is:

"All property which is subject to State taxes shall be assessed and listed for taxation, alphabetically, for the entire city, without reference to wards. The assessment shall be made by the Comptroller and his assistants, and the valuation of real and personal property shall be subject to be increased or diminished by the council under regulations to be made by ordinance." Sec. 1, Art. XII, Chapter, p. 28.

Bearing in mind that levy and assessment are wholly distinct functions, the first being the declaration of the subject and the rate, and the 2d the listing and valuation, which several functions are usually committed to different persons or bodies; that the Legislature has committed the listing and valuation, exclusively, to the Comptroller, and has committed no *original* function, as to either listing or valuation, to the council; but has placed within the *revisory* power of the coun-

cil, *only* the valuation of real and personal property, which "valuation" may be "increased or diminished by the council under regulations to be made by ordinance;" it appears there is no basis, whatever, in the charter, for the *council* to prescribe, by ordinance, regulations other than that such as concern the method of increasing or diminishing valuations.

The city council realizing, that under the Constitution of Florida no valid tax can be enforced, in the absence of "just regulations prescribed for securing a just valuation of *all* property," and that regulations for *listing all property, and* for the *valuation* of such property, were alike indispensable in any system of "provision for a uniform and equal rate of taxation," and that no provision had been made by the Legislature to meet these constitutional prerequisites, in respect of municipal taxation, undertook by ordinance to provide such regulations. We submit this ordinance is "*ultra vires.*"

The council, the legislative branch of the municipality, does not derive the power to assess taxes for municipal purposes from the Constitution. It is not enough to show that there is a constitutional warrant for the Legislature to grant such power.

We concede there is ample warrant in the Constitution for the grant to the municipality by the Legislature of such power. But where is the legislative grant? Certainly prior to the amendment of the charter, there was no power in the *council* to perform the functions of listing and valuation for municipal taxation. Under the original charter, acts 1887, p. 178, Art. 12, sec. 1, it was provided, "The assessment of taxes shall be made by the recorder, under the laws by which such property is assessed for State and county purposes; but the valuations shall not exceed those imposed for

State and county purposes." The council, under the original charter, had no power over the listing or valuation. The listing was given by the recorder, and the valuation was fixed by the State assessor. The power of the council was confined, sec. 3, Art. 12, to making provision by ordinance for the correction of erroneous assessment, and for any defect in assessment. Their power and duties in that respect were assimilated to those of the County Commissioners in respect to taxation for State and county purposes.

The question recurs then does the charter, as amended, enlarge their competency in that behalf, so as to authorize them to prescribe by ordinance, provision for a uniform and equal rate of taxation, and such regulations as shall secure a just valuation of *all* property.

It will be observed, no general power to levy and collect taxes, by ordinance has been conferred upon the council; the power conferred, whatever it is, is in terms subject to the limitations of the act of incorporation.

Certainly the power "to provide by ordinance for the correction of erroneous assessments and for any defect in the assessment," does not embody a legislative grant of authority to "provide for a uniform and equal rate of taxation and to prescribe such regulations as shall secure a just valuation of all property." The power "to provide by ordinance for the correction of erroneous assessments and for any defect in the assessment," was in full operation under the original charter, which gave to the recorder the *exclusive* power to make assessments for municipal purposes under the laws by which such property is assessed for State purposes. If this be so, then no power whatsoever has been granted to the council to make the ordi-

nance prescribing the regulations under which the assessments in question were made.

This is apparent from another view. Suppose the Legislature were to strike down the body of provision found in the revenue law prescribing regulations for the assessment for State and county purposes, would the commissioners court under the power conferred upon it, for correcting erroneous and defective assessments, and curing defects in assessments, looking to uniformity of taxation and equalization of values, be authorized to prescribe *anew* the regulations—the body of provisions, theretofore prescribed by the Legislature, and make those regulations the basis of a valid tax?

Again: It may be contended, that the power to pass the ordinance of February 9, 1891, is derived from the grant of power to impose taxes. This charter grant of power is, as we have seen, subject to the *limitations* of the charter. And so far as the owner may be supposed to contain the right to assess, the duty of assessing is *in terms* by that charter put upon the Comptroller. So, the power to tax, as limited in the charter, is not *in fact* broad enough, if this contention be true, to support this ordinance.

But we contend a power conferred upon a city to levy taxes, does not involve or contain the power to the city to prescribe the regulations, which the Constitution declares the Legislature *shall* prescribe.

We insist the Legislature, under the inhibition of the Constitution, *could not* if it sought to, confer upon the city council the power to make, by ordinance or otherwise, "provision for a uniform and equal rate of taxation," and to "prescribe, by ordinance or other-

36

wise, such regulations as shall secure a just valuation of all property."

The Constitution itself seems to make it clear the Legislature has no such power. Sec. 1, Art. 9, ordains "The *Legislature* shall *provide* for a uniform and equal rate of taxation, and shall *prescribe* such regulations as shall secure a just valuation of all property."

Assessment, as we have seen, involves no legislative function. It consists in the application by listing and valuation, under rules prescribed, of a per centum—a legislative declaration of the amount of tax—to property, declared by the Legislature to be subject to taxation. Assessment involves no right to prescribe rules and regulations for a uniform and equal rate of taxation, but simply the ministerial duty of listing and valuation. And the Constitution in terms remits to the municipality the listing and valuation of property which ministerial function of listing and valuation under the former Constitution, the council could have nothing to do with. But the Legislature, under the former Constitution, could and did delegate to the council the power to impose taxes. And this power to impose taxes did not under the former Constitution carry with it, or contain the power, to prescribe the regulations, and to make the provisions for uniformity required by the Constitution. That power was confined by that constitution to and had to be exercised by the Legislature.

The Constitution now in force provides, sec. 5, Art. 9, "But the cities and incorporated towns shall make their *own* assessments for municipal purposes upon property within their limits." This provision must be understood, in the light of the previous Constitution, and a just consideration of the causes, in which

it originated; Mayor vs. Stonewall Ins. Co., 53 Ala. 570; and this position, we submit, pursuing the constitutional differentiation of assessment and levy, was intended to do nothing more, its language is incapable of being construed to mean more, than to relieve corporations of the requirement, under the former Constitution, inexorably confining them to the listing and valuation made for State and county purposes. They were not relieved, nor were they intended to be relieved, of the constitutional restriction and limitation, expressed in sec. 1, Art. 9, that the *legislative* discretion must be exercised in prescribing the rules and regulations, under which equality, uniformity and a just valuation must precede a lawful tax.

The inability of the city council to make provision for a uniform and equal rate of taxation, and to prescribe regulations to secure a just valuation of all property is further manifest, when secs. 24, 21 and 20, of Art. 3, of the State Constitution are considered.

Sec. 24 declares: "The Legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local and specific laws are provided by the Legislature that may be inconsistent therewith."

It is clear then, if under local or special laws, a system of municipal taxation is provided for a special municipality, departing from the uniform system, else while applicable, such system or special laws can only be passed by the *Legislature*, and under the restrictions applicable to such legislation ordained by the Constitution. 23 Fla. 483.

If it be true as laid down in Mayor vs. Stonewall Ins. Co., 53 Ala. 570, that "taxation by municipalities is taxation by the State"—that its nature, as a governmental agency for raising revenue, is not changed by

its delegation to the corporation, it is perfectly obvious the Legislature, under the mandate of the Constitution *must* exercise *its* discretion in *prescribing* the rules and regulations, required in *its* judgment, to produce the uniformity, equality and just valuation, an indispensible prerequisite to a *lawful* tax, to whomever it or the Constitution may delegate the ministerial function of applying these rules to the subjects of taxation. As the Legislature, *itself*, must prescribe these rules, the tax payer has the constitutional right to demand the protection of the courts against the seizure of his property, until and except the municipality or the Comptroller for the municipality, has followed rules and regulations formulated by the Legislature, for taxation for municipal purposes.

The provision for "a uniform and equal rate of taxation and regulations securing a just valuation of all property" for purposes of taxation, as ordained by the Constitution *to be prescribed by the Legislature*, was intended to protect the tax payer not merely from taxation imposed directly for State purposes, but to protect him from all taxation imposed through State agencies.

Indeed, "in the case of municipal taxation, *intendments* in favor of the regularity of the tax are less liberal than in the case of direct State taxation." 65 Ala. 142.

The court below, apparently conceding the force of these constitutional provisions to be sufficient to strike down the assessment as originally laid by the city, placed its judgment that the assessment was lawfully made wholly upon the ground that the Legislature, by a retrospective act, Ch. 4039, p. 64, acts 1891, had imparted life and legal validity to that assessment.

We submit the case of Jacksonville vs. Bassnett, 20 Fla. 525, relied on in the court below, does not sustain the position the Legislature under the inhibitions of the Constitution may validate this assessment. In so far as it affects the question at issue here, it supports our view. The listing and valuation, the basis of the assessment in that case, was the listing and valuation, and none other than the listing and valuation, made for that tax year, for State and county purposes. And the amount of his apportionate tax, in that case, was simply the per centum, under a city ordinance, applied by the city assessor to that listing and valuation, and run out against individual tax payers. The defect was, and the *only* defect, the absence of *legislative* authority to impose any rate, caused by a bungling statute amending and repealing a former act.

The rules and regulations prescribed by the Legislature, resulting in the *assessment* upon which this per centum was run, in that case, were wholly unobjectionable. Indeed it was the listing and valuation made for State and county purposes, under rules prescribed by the Legislature fully meeting the constitutional requirements in *that* behalf. The antecedent power in the council to tax was the only thing wanting to a valid tax; and this was supplied subsequently by the validating act. Says the court, following this line of thought, "wherein does the Constitution provide that a past assessment unlawful for want of legislative authority, *only*, to levy a tax," can not be validated. "The past assessment as made by the city violates no organic rule or requirement of equality or uniformity or other limitation upon the legislative power;" and for the simple reason, it was made or had under the control of a system of rules and provisions theretofore passed by the Legislature, in conformity to the consti-

tutional requirements. In the case at bar, the rules and regulations securing this uniformity and equality and just valuations, as required by the Constitution, were stricken down, as applied to municipal taxation. Sec. 11, Ch. 3953, p. 198, acts of 1889.

The original act was as follows: "All property which is subject to State taxes shall be assessed and listed for taxation, alphabetically, for the entire city without reference to wards. The assessment of taxes shall be made by the recorder under the laws by which such property is assessed for State and county purposes, but the valuations shall not exceed those imposed for State and county purposes. Privileges may be licensed and taxed by city ordinances." Art. 12, sec. 1, Ch. 3775, acts of 1887, p. 178.

Sec. 11, Ch. 3953, acts 1889, p. 198, is as follows: "That section one of article twelve of said act be, and it is hereby amended so as to read as follows:

Section 1. All property which is subject to State taxes shall be assessed and listed for taxation, alphabetically for the entire city, without reference to wards. The assessment shall be made by the Comptroller and his assistants, and the valuation of real and personal property shall be subject to be increased or diminished by the council under regulations to be made by ordinance. Privileges may be licensed and taxed by city ordinances. The council may provide for licensing the keeping of dogs, and for the destruction of dogs, the owner or keeper whereof shall not comply with regulations prescribed by the council in respect thereto, and for the punishment of persons violating ordinances on the subject. All the duties now devolved upon the recorder in reference to the assessment and levy of taxes shall devolve upon and be performed by the Comptroller."

"The primary cause of the difficulty" in the Bass-nett case was want of legislative grant to impose the tax. "The primary cause of the difficulty" in the case at bar is not the *want* of power to impose the tax. It is the absence of provisions made by the Legislature for a uniform and equal rate of taxation, and the *absence* of regulations prescribed by it, securing a just valuation of all property, and the absence of any grant, *in fact* if there could be under the Constitution, of power to the city council to prescribe the rules and regulations required to create a valid tax. Nor is there any legislation in the so-called validating act, supplying this lack. No grant of added power, in any form whatever, is made or sought to be made in this "validating" legislation.

The power of the Legislature to validate, and the limitation upon it, is thus crystalized into a formula by the text books and adjudications:

"If the thing, which failed to be done, and which constitutes the defect in the proceeding, is something which the Legislature might have dispensed with the necessity of by a prior statute, then the subsequent statute dispensing with it retrospectively must be held valid." 76 Am. Dec. 527.

There were many defects in the proceeding, in the case at bar, pointed out in the petition. The defect, we are now discussing, the cutting down by the amended charter, of the rules prescribed for equality and uniformity in State taxation, in their application to taxation by the city of Jacksonville, and the failure of the Legislature to prescribe any rules, required to produce uniformity and equality, is the *precise* defect which can not be cured by the validating act; since the Legislature under the Constitution had no power in the first instance to dispense with those rules. In-

deed, as clearly implied by Judge Wescott on the Bass-nett case, and as expressly provided by the Constitution, the *pre-existence* of the rules, authoritatively *prescribed*, and followed, in the application of the per centum or rate taxed by legislative authority, to the ascertainment of the just and equal amount to be contributed by the tax-payer to the public burden, the Legislature could *not* dispense with, or cure the omission of, in a validating act.

*Stephen E. Foster*, for Appellee.

LIDDON, J.:

Appellant filed his petition in the Circuit Court praying that certain assessments for taxation of his property, for the year 1890, by the appellee, be adjudged and declared not lawfully made. The court denied the petition. The petition sets forth various alleged defects and irregularities in the assessment made by the city. The assessments complained of were legalized and confirmed by the act of 1891 (Chapter 4030 laws of Florida).

The brief of counsel for appellant presents but one point for our consideration, or but one reason why it is claimed that the assessments in question are void and incapable of being validated by the act referred to. It is claimed by appellant, and admitted by appellee, that the act of 1889 (Chapter 3953 laws of Florida), under which the assessments in question were made, does not expressly provide "for a uniform and equal rate of taxation," nor prescribe "such regulations as shall secure a just valuation of property" for taxation. The act in question is a special one in reference to the city of Jacksonville, and the portion providing for assessments of property for taxation has

reference only to city taxation. The eleventh section of this act, which is an amendment of a prior act, provides that "all property which is subject to State taxes shall be assessed and listed for taxation, alphabetically for the entire city, without reference to wards. The assessment shall be made by the Comptroller and his assistants, and the valuation of real and personal property shall be subject to be increased or diminished by the council under regulations to be made by ordinance." It is not contended that the taxation sought to be imposed upon the appellant's property is not, as a matter of fact, based upon "a uniform and equal rate," and in pursuance of "regulations" which "secure a just valuation of property," but objection is made that the "uniform and equal rate" is provided and the regulations securing "a just valuation," are prescribed by ordinance of the city council instead of by an act of the State Legislature. The act last mentioned, which leaves the fixing of the rate and the regulations for valuation of the property to the city ordinances, is asserted to be in conflict with section 1 of Article IX of the Constitution of the State, and that there is no power under such Constitution to provide a rate of taxation or regulations for valuation of property except in the Legislature of the State, and that such power can not be delegated to a city council. It is not contended that the Legislature can not validate all irregular and illegal assessments, where there is no constitutional obstacle to such action. The section of the Constitution alluded to is as follows: "The Legislature shall provide for a uniform and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for munici-

pal, educational, literary, scientific, religious or char-
itable purposes." The question for our solution is
whether the quoted section of the Constitution is ap-
plicable only to taxation for State purposes, or whether
it is applicable to municipal taxation. The position
assumed by appellant practically amounts to the
proposition, that the Legislature can not authorize
cities and towns to assess and impose taxes for munic-
ipal purposes except under specific provisions made
by the Legislature, providing for a uniform and equal
rate of taxation, and regulations prescribed by the
Legislature securing a just valuation of all property
subject to such municipal taxation. Upon reading the
whole article of the Constitution in which the quoted
section is found, we are of the opinion that such sec-
tion has reference only to State taxation or for State
purposes. The portion of the fifth section of the
same article, which provides for municipal taxation,
reads as follows: "Sec. 5. The Legislature shall au-
thorize the several counties and incorporated cities or
towns in the State to assess and impose taxes for
county and municipal purposes, and for no other pur-
poses, and all property shall be taxed upon the prin-
ciples established for State taxation. But the cities
and incorporated towns shall make their own assess-
ments for municipal purposes upon the property within
their limits." We know that it has been said that all
authority upon the subject of taxation, except as re-
stricted by the Constitution, is vested in the legisla-
tive department of the State, and that the levying of
taxes by the authorities of a county, city or town for
their support, is as much an exercise of the taxing
power as when levied directly by the State for its sup-
port. The State acts by the municipal governments,
and their acts in levying taxes are as much the acts of

the State as if the State acted by its own officers. Mayor of Mobile vs. Stonewall Ins. Co., 53 Ala. 570, text 582. The proposition announced by the Alabama court may be correct upon general principles, but our Constitution, we think, makes a clear distinction between State and municipal taxation. Or, admitting that all taxation is imposed by the State, that imposed for State purposes in State taxation, and that imposed by the State, through municipal authorities, for municipal purposes is municipal taxation, and the Constitution recognizes a distinction between the two classes of taxation. If there is no difference between them, why should the framers of the Constitution have provided in section five, *supra*, that in the exercise of the power of taxation which might be conferred upon municipal corporations by the Legislature, "all property shall be taxed upon the *principles established for State taxation.*" In our opinion "the principles established for State taxation," referred to in this section, are those of uniformity, equality and a just valuation of all taxable property as "established" in section 1 of the same article quoted above. This view is made clearer by reference to the latter clause of the quoted portion of the same section: "But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits." Undoubtedly if it could be shown that neither by statute nor by ordinance of the city, had any provision been made for "a uniform and equal rate of taxation," or for securing "a just valuation of all property" subject to taxation, then the principles established for State taxation, requiring provision to be made for uniformity, equality and just valuation would have been violated, and the assessment would be void. The requirements of the

Constitution as to municipal taxation is only that "all property shall be taxed upon the principles establish-ed for State taxation." A principle is one thing, and the form or manner of the practical application of the principle is another. So that the great principles are preserved, we see no constitutional objection to their practical application in one form to State taxation, and in another form to taxation for municipal pur-poses. An act of the Legislature may be necessary for one, while a city ordinance may be sufficient for the other. It not being shown that the great indis-pensable prerequisites of uniformity, equality and just valuation have not been provided for in the as-sessments upon the appellant's property, we can not see that the Constitution has been invaded by reason of the practical application of the essential principles by the city council, instead of by the Legislature of the State. It is clearly within the power of the Leg-islature to authorize a municipal corporation to assess and impose taxes, but such power must be exercised by such corporation in such manner as not to conflict with constitutional principles.

There is no error in the record. The judgment of the Circuit Court is affirmed.

————

MABRY, C. J., concurring in the affirmance of the judgment:

The special point insisted on in this case is, that the city of Jacksonville was not authorized under section 11 of Chapter 3953, laws of 1889, which was an amend-ment of section 1 of the charter act of the city passed in 1887, to levy and assess taxes upon property of the appellant situated in said city. The amendment made

in 1889 provides that "all property which is subject to State taxes shall be assessed and listed for taxation, alphabetically for the entire city, without reference towards. The assessment shall be made by the Comptroller and his associates, and the valuation of real and personal property shall be subject to be increased or diminished by the council under regulations to be made by ordinance. Privileges may be licensed and taxed by city ordinances. The council may provide for licensing the keeping of dogs, and for the destruction of dogs, the owner or keeper whereof shall not comply with regulations prescribed by the council in respect thereto, and for the punishment of persons violating ordinances on the subject. All the duties now devolving upon the recorder in reference to the levy and assessment of taxes shall devolve upon and be performed by the Comptroller."

The assessment in question took place under said amendment. The contention here for the appellant is based upon the view that under section 1 of Article IX of the Constitution, it was the duty of the Legislature to prescribe in the act conferring authority upon the city to assess taxes, regulations that would secure a just valuation of all property as well as a uniform and equal rate of taxation, and it can not be left to the municipal authorities to secure them by such ordinances as they may ordain. I believe that the limitations contained in section 1 of Article IX of the Constitution, as to the uniformity and equality of the rate of taxation, and the regulations to secure a just valuation of all property, apply to taxation for county or municipal purposes, as well as to taxation for State purposos. The further limitations contained in the fifth section of Article IX, confining taxation by counties or incorporated municipalities to county or municipal pur-

poses respectively, and that incorporated cities and towns shall make their own assessments, do not remove or in any way interfere with the requirement as to uniformity and equality of taxation and the regulations to secure a just valuation of property contained in the first section of Article IX.

In the case before us it is not contended here that the assessment made by the city of Jacksonville under ordinances passèd after the adoption in 1889 of the amendment of the city charter, are not in fact just, or were not made under regulations adopted by ordinances that in fact secure a just valuation of all property subject to taxation in the city.

The Legislature in 1891 (Chapter 4039) passed an act to legalize the assessments and levies made by the city of Jacksonville for the years 1887, 1888, 1889 and 1890. The assessments in question are embraced within those mentioned in this act. The Legislature could, of course, authorize the assessment and levy of taxes by the city and prescribe the regulations as to the uniformity and equality of taxation and just valuation of property, and this having been done by the city under ordinances passed after the amendment of the charter, it was competent for the Legislature to legalize such assessments, if any irregularity existed as to the making of them. The case comes, I think, within the principle of the decision in city of Jacksonville vs. Bassnett, 20 Fla. 525.

Without expressing an opinion as to the sufficiency of the legalization in the amendment to the charter to authorize the ordinances in the first place, I discover no defect in the legislative power to ratify or legalize such assessments.